Chester E. **BRANDON**, Plaintiff,

v.

John W. **GARDNER**, Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. 942.

United States District Court
S. D. West Virginia,
Bluefield Division.

Sept. 9, 1966.

Clay S. Crouse, Beckley, W. Va., for plaintiff.

Milton J. Ferguson, U. S. Atty., George D. Beter, Asst. U. S. Atty., Huntington, W. Va., for defendant.

CHRISTIE, District Judge.

This is an action under Section 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g), to review a final decision of the Secretary of Health, Education and Welfare. A decision by a hearing examiner on December 15, 1965, became the final decision of the Secretary on March 2, 1966, when the Appeals Council denied plaintiff's request for review. The final decision holds that plaintiff is not en-titled to the establishment of a period of disability or disability insurance benefits under the provisions of the Act prior or subsequent to the 1965 Amendment.[1]

Plaintiff last met the special earnings requirements of the Social Security Act as of March 31, 1959. Under the Act, 42 U.S.C.A. § 416(i) (1), an individual shall not be considered to be under a disability unless he furnishes such proof of the existence thereof as may be required, thus, the burden is upon the plaintiff to establish by credible evidence that he was disabled within the meaning of the Act prior to March 31, 1959, when he last met the insured status, though it need not be carried beyond a reasonable doubt. Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964).

The standard of review in actions of this nature is found in Section 205(g) of the Social Security Act, as amended, and is as follows:

"The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *."

In short, the Courts are not to try the case *de novo*, and if the findings of the Secretary are supported by substantial evidence, the Courts are bound to accept them. Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962). Nevertheless, it is said that this provision of the law does not contemplate that the Courts should surrender their "traditional function," but rather that they will view the record as a whole, not for the purpose of making an independent finding, but to determine whether or not the finding is supported by substantial evidence and to see

---

1. Section 303(a) of Public Law 89–97 (the 1965 Social Security Amendments) amends the meaning of the term "disability" as found in 42 U.S.C.A. § 423 as follows: "(I)nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months * * *." Previously the physical or mental impair-ment had to " * * * be expected to result in death or to be of a long-continued and indefinite duration."

Under the provisions of Section 303(f) of the law a period of disability may be established by use of this amended definition. However, benefits would only be payable beginning in September of 1965 or the seventh month in which an individual has been determined to be under a disability under the amended test, whichever is later.

to it that the Administrative Agency does not act arbitrarily or capriciously in denying just claims or allowing unworthy ones. Thomas v. Celebrezze, supra; Underwood v. Ribicoff, supra; Snyder v. Ribicoff, 307 F.2d 518 (4th Cir. 1962). In determining the meaning of "substantial evidence," the courts have held it to be more than a scintilla, but less than a preponderance. Thomas v. Celebrezze, supra. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and it must be based on the record as a whole. Celebrezze v. Bolas, 316 F.2d 498 (8th Cir. 1963). The Fourth Circuit has pointed out that if there is only a slight preponderance of the evidence on one side or the other, the Secretary's findings must be affirmed. Underwood v. Ribicoff, supra. Therefore, the immediate task of this Court is to determine whether the defendant's denial of the plaintiff's claim is supported by substantial evidence.

Plaintiff was born December 23, 1921, in Virginia, and has an eighth grade education. He is married and lives with his wife and nine minor children. Most of his work experience has been around a limestone quarry where he performed a number of jobs, some being scaler, jackhammer operator and dump truck driver. He has also worked as a helper on a wagon drill and on a well drilling machine. From May 1942 to September 1945, he was in the army where he was primarily occupied with truck driving or on KP duty. His only other work experience has been that of hand loading coal for about a year and as a dishwasher at the Greenbrier Hotel for about two or three months. With the exception of the dishwashing job, his work experience has been of a fairly heavy nature.

Plaintiff was laid off from his quarry job in April of 1955. In April of 1956, while attempting to lift a crosstie, he strained his back and has allegedy been unable to work since. The only work that he has apparently engaged in following this accident was attempting to drive a truck for about a week, which he states he had to give up because it was too hard on him.

Plaintiff filed his first claim for disability on June 24, 1958. This claim was disallowed October 22, 1958, and no further action was taken on the application. On April 3, 1961, he filed a second application. This was denied and on April 9, 1962, he appealed to a hearing examiner, waiving his right to appear and give evidence, and requesting a decision on the record evidence. This request for a hearing was dismissed by the examiner as not being timely. Plaintiff took no further action with respect to this application. However, on October 11, 1965, the hearing examiner who had previously dismissed his request for hearing (April 9, 1962), vacated the previous order of dismissal and reinstated it upon the active docket. It is this hearing with which the present appeal is concerned. Plaintiff has also filed a third and fourth application for benefits, which applications were denied and no further action was taken from them. Neither one is pertinent to the instant action.

The first medical evidence in the present record is that of plaintiff's hospitalization in the Veterans Hospital in Beckley, West Virginia, from May 22, 1956 to May 31, 1956. The report indicates that plaintiff had been admitted complaining of back ache, stating that he had injured his back two or three weeks earlier. Apparently he had injured his back in 1948 and had been having episodes of low back pain since that time. At admission he was described as having pain in the mid line of his low back which radiated into the left hip and leg. An X-ray of the lumbar spine from D–12 to SA–1 showed a small amorphous calcified ovoid nodule posteriorly. This was thought to have the appearance of a calcified herniated nucleus pulposus. He was given pain pills, diathermy to his low back and placed on a hard board. Mention is made of an injury to the left eye some six years previous, although elsewhere in the report an opacity of the right lens is listed as unchanged and untreated. The

final diagnosis was a probable herniated nucleus pulposus of the 5th lumbar interspace which had been treated and improved.

The next report is that of Dr. Harold H. Kuhn, full-time orthopedic specialist, dated March 26, 1957. His examination revealed tenderness at the lumbosacral joint as well as over the left buttock, thigh and calf. It was Dr. Kuhn's opinion that plaintiff was suffering from a chronic lumbosacral strain with sciatic neuralgia of the left lower extremity and that he needed ten to fourteen, possibly eighteen, days of hospitalization for conservative treatment consisting of traction and later fitting of a lumbosacral support. The doctor also pointed out that at the present time there was some difficulty in getting patients, particularly colored patients, into hospitals.

A Veterans Hospital X-ray report, dated April 3, 1958, made the following comparisons with those taken during plaintiff's April 1956 hospitalization there: (A) Essentially unchanged; (B) "narred" (sic) and poorly ossified laminae of L–5; (C) slight roughening of the right L–5–SA–1 apophyseal joint postural and minimal; (D) otherwise no pathology found.

Dr. H. H. Hancock, general practitioner, in a report to the West Virginia Department of Welfare, dated October 24, 1959, stated that plaintiff did not look disabled to him and that he lacked the will to work. It was his opinion that plaintiff could work if he wanted to do so. In a report to the Department of Health, Education and Welfare, dated April 5, 1961, Dr. Hancock stated that plaintiff had been visiting him about once a month since 1956 and that he was suffering from osteo-arthritis of the lumbar vertebrae and unable to lift anything heavy. In another report to the Department of Welfare, dated November 16, 1962, Dr. Hancock found plaintiff to be suffering from chronic osteo-arthritis of the "lumbo social (sic) spine" and only able to perform very light part-time work. The doctor observed that he had been on relief since 1957 and had never

been properly studied. This report contains the first reference to plaintiff's alleged skin condition. In a report to the Department of Health, Education and Welfare, dated November 27, 1962, Dr. Hancock stated that he felt plaintiff was suffering from a ruptured disc and that if and when he had proper diagnostic study he might be able to go back to work. He felt that plaintiff needed a myelogram and spinal fluid examination.

Plaintiff was admitted to the Bluefield Sanitarium on January 21, 1963, and was discharged January 24, 1963. Physical examination revealed a well-developed, well-nourished, young negro male who did not appear to be in acute distress. A slight increase in the lumbar lordotic curve was noted as well as considerable tenderness over L–5, S–1 and S–2 spinous processes and over the left iliolumbar area. Forward and backward bending were well performed but were attended by pain low in the back. There was a decrease of pin and touch over the mesial aspect of the right leg compared with the left. X-rays of the lumbosacral spine showed "minimal narrowing of the 4th lumbar disc space. No other abnormalities are seen in the lumbosacral spine." A lumbar myelogram revealed a "minimal left central compression at the L–4 disc space with slight edema of the nerve root sheath at this level. There was a right central compression at the D–12 disc space of undertain (sic) nature and significance." The fluid was clear. Sufficient grounds to warrant consideration of surgery were not found and it was recommended that a lumbosacral support be authorized.

Plaintiff was given a disability evaluation by the Veterans Administration in October of 1960. He was described as having normal carriage, posture and gait, with the back, including the neck, having normal contour and normal range of motion without tenderness or spasm. The right leg was found to have a congenital shortness of ½" which resulted in a pelvic tilt. There was no evidence of psychiatric or personality disturbances. Plaintiff did not make any men-

tion of his skin disorder. The diagnosis was (1) general medical examination within normal limits; (2) eyes, all findings essentially negative. Complaints "functional" in character; (3) congenital shortness of ½″ in right leg with resulting pelvic tilt, and (4) glycosuria.

Dr. C. L. Cavendish, an osteopath, examined plaintiff on January 21, 1964, for the West Virginia Department of Welfare. His diagnosis was (1) atopic eczema, contact type—possible allergy; (2) chronic anxiety reaction; (3) opacity of "night" (sic) lens, light decreased acuity; (4) internal hemorrhoids; (5) hypertrophic gastritis; and (6) right leg ⅝ inch short resulting in scoliosis of the lumbar spine. It was his opinion that plaintiff was precluded from heavy work but that he could perform full-time light work.

From February 24, 1964 to March 6, 1964, plaintiff was hospitalized in the Greenbrier Valley Hospital. The final diagnosis was (1) influenza with mild myositis of the mid thoracic area of the back; (2) chronic low back syndrome not totally disabling. X-rays showed minimal degenerative changes in the dorsal spine with preservation of the intervertebral spaces. The report stated that plaintiff really was disabled from doing heavy work such as running a jack hammer, but that he was certainly employable at light types of work.

In a report captioned "To Whom It May Concern," dated March 16, 1964, Dr. Hancock stated that he was of the opinion that plaintiff was presently unable to do any work. He also recognized that a great many of plaintiff's complaints were of a nervous basis (psychoneurosis, anxiety type).

Plaintiff was examined by Dr. W. E. Wilkinson, Medical Director of the Beckley Mental Health Center, on June 1, 1964. Dr. Wilkinson stated that he had previously examined plaintiff on October 4, 1963, while he was a patient in the Beckley Veterans Administration Hospital. He described plaintiff as seeming entirely convinced that he was a chronic invalid and not attempting to find any kind of work. The diagnosis was passive-dependent, inadequate personality, with a mild superimposed chronic anxiety reaction. He could not make a diagnosis of any severely disabling psychiatric sickness.

Dr. Kuhn again examined plaintiff on July 27, 1964, for the West Virginia Rehabilitation Office. He was found to be suffering from a lumbosacral myofascial strain but eligible for training. It was suggested that he sleep on a firm mattress and that he be fitted with a lumbosacral support. If discomfort persisted, conservative treatment consisting of traction and physiotherapy was recommended.

The final report is one by Dr. Hancock to the Department of Welfare, dated August 14, 1965, wherein he found plaintiff to be suffering from (1) an ill defined disease of the musculo-skeletal system involving the lumbo "social" (sic) area, cause undetermined; (2) generalized atopic dermatitis; (3) psychoneurosis, chronic anxiety type. Prognosis was considered poor, with Dr. Hancock observing that "he (plaintiff) is not going to work. Has been on relief too long. He isn't going to give it up now."

█ In determining whether or not the Secretary's determination that plaintiff has failed to establish inability to engage in substantial gainful activity prior to March 31, 1959 is supported by substantial evidence, the Court must examine not only the objective findings of the examining and treating physicians, including their diagnosis and expert medical opinions, but the subjective evidence of pain and disability as well as plaintiff's educational background, work history and present age. Underwood v. Ribicoff, supra; Dillon v. Celebrezze, 345 F.2d 753 (4th Cir. 1965).

█ In his April 9, 1962 request for hearing plaintiff listed his impairments as "back trouble, heart, stomach, plus diabetes, arthritis." The law is clear that any disability that has its onset or becomes disabling after the claimant last

meets the earnings requirements may not be the basis for a favorable finding. Taylor v. Ribicoff, 204 F.Supp. 144 (1962). Thus, the fact that plaintiff may now be disabled as a result of a deterioration in his condition or because of other ailments that were not present as of March 31, 1959 is not pertinent to this decision.

Plaintiff claims that he has suffered from dermatitis for a number of years, however, there was no mention of it in his October 1960 disability evaluation for veterans benefits. Nor did he mention it in his first, second, or third application for Social Security benefits. It is mentioned in the fourth application filed September 8, 1964. In fact, he first mentioned it in his statement of disabilities to Dr. Hancock on November 16, 1962. There is no evidence in this record that this condition in any manner affected his ability to work prior to March 31, 1959.

There is likewise a dearth of information about any heart or stomach condition which as of March 31, 1959, alone or in conjunction with other conditions, added to his inability to work. Nor is there any evidence that his diabetes, prior to March 31, 1959 or at any time since then, adds an iota of handicap to any other medically determinable condition.

We are then left with three basic conditions which may be deemed to have existed on or before March 31, 1959 and which alone or in concert may have rendered plaintiff disabled—his injured right eye, his ill defined back condition, including the shortness of his right leg, and his mental state.

Insofar as the eye injury is concerned, it does not appear to be very severe, in fact some of the physicians have reported his having 20/20 vision in it. The medical evidence does not indicate that his mental state is such as to be considered disabling. Admittedly, a number of his physical symptoms, including his dermatitis, have been described as psychoneurotic in nature, however, this was several years after plaintiff's insured status had expired and as late as June 1, 1964, the psychiatrist, Dr. Wilkinson, found his mental condition to be a mild superimposed chronic anxiety reaction combined with a personality defect which was not considered a disabling psychiatric sickness. There was no evidence of psychiatric or personality disturbances during the October 1960 veterans examination.

■ Unlike the case of Beggs v. Celebrezze, 356 F.2d 234 (4th Cir. 1966), there is no indication of a steady and increasing deterioration in plaintiff's mental condition. As a matter of fact the implication is very strong, particularly in the reports of Dr. Hancock, that plaintiff has very little, if any, desire to return to work as long as he can continue to receive welfare. This type of social illness is not the sort of mental disability contemplated within the Act's meaning of a medically determinable mental impairment.

Plaintiff's principal complaint and the one upon which his claim must stand or fall is his back ailment, which appears to be degenerative osteo-arthritis of the spine with a possible herniated intervertebral disc. It is not clear whether the shortness in his right leg is a result or cause of this condition, however, in either event it seems to be minimal and elevation appears to correct any resulting scoliosis.

■ It is recognized that a back condition of this type may be, and often is, painful and that in the instant case plaintiff alleges that he suffers from constant pain. It is also recognized that pain unaccompanied by any objectively observable symptoms which is, nevertheless, real to the sufferer and so intense as to be disabling will support a claim for disability benefits. Ber v. Celebrezze, 332 F.2d 293 (2d Cir. 1964). However, the examinations of plaintiff show him as not appearing in acute distress or not appearing disabled.

It is extremely unfortunate that plaintiff's condition existed for a number of years before adequate tests were given

to determine the cause of his affliction. He should not be denied benefits because of the difficulty that may have existed in getting colored welfare patients into hospitals, yet it must be pointed out that when, in January of 1963, a lumbar myelogram and lumbar puncture were finally given him, his condition was not considered severe enough to warrant surgery, but rather the only recommendation was that he be authorized to have a lumbosacral support.

It may be, as some of the later medical reports indicate, that plaintiff is precluded from returning to the strenuous work of operating a jack hammer in a quarry, however, before the burden of proof as to the jobs an individual retains the capacity to perform shifts to the Secretary, the claimant must show the requisite disability to prevent a return to his past occupation while meeting the insured status. Bradey v. Ribicoff, 298 F.2d 855 (4th Cir. 1962). In this instance while plaintiff may not have been able to do some of his past quarry jobs, the evidence does not exclude him from all of them. Although plaintiff testified that he was unable to drive a truck at his brother's coal mine, the conditions and circumstances under which this took place cannot be said to completely exclude him from possible truck driving jobs during his insured status. Even more significant is the fact that he has previously done work in a kitchen. There is no evidence that his back condition would have precluded a return to this type of work. It is possible that his skin condition has now progressed to the point where he would not be acceptable for such employment, however, there is no indication that it was this severe on or prior to March 31, 1959.

On this review, we must view the record as a whole, not for the purpose of making independent findings, but to determine whether the administrative findings have substantial evidentiary support. If we find that the support exists, as we do here, it is our clear duty

under the mandate of the statute to uphold them, even though we might have arrived at a different conclusion initially. Snyder v. Ribicoff, supra.

Accordingly, in view of the record as a whole, it is clear that a reasonable mind could very well have reached the same conclusion as did the Secretary—that the evidence failed to establish the claim asserted—and that being so, the defendant's Motion for Summary Judgment must be granted.