**Billy P. ROOKS, Plaintiff,**

v.

**Robert H. FINCH, Secretary of Health, Education & Welfare, Defendant.**

**Civ. A. No. 1424.**

United States District Court,
E. D. North Carolina,
Wilmington Division.

Aug. 25, 1970.

Robert White Johnson, Wilmington, N. C., for plaintiff.

John R. Whitty, Asst. U. S. Atty., Raleigh, N. C., for defendant.

## OPINION and JUDGMENT

DALTON, District Judge, sitting by designation.

This action is commenced pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Secretary of Health, Education and Welfare. The decision holds that Billy P. Rooks, is not entitled to any period of disability or disability insurance benefits on the basis of an application filed on February 21, 1967. The decision, rendered by a hearing examiner on October 25, 1968, became "final" when the Appeals Council denied a request for review on February 7, 1969.

Claimant, while working for the Ideal Cement Company, was injured on October 30, 1966, in a truck loading accident. Claimant alleges that he has been unable to work since that date.

On November 2, 1966, claimant was admitted in the James Walker Memorial Hospital, Wilmington, North Carolina, for treatment of acute pain in the low back. A medical examination made on the same date by James R. Dineen, M.D., an orthopedic surgeon, found claimant to be healthy but in moderate distress as far as standing up straight and moving about in normal gait. Dr. Dineen also found perispinal muscle spasms to be quite severe in the lumbar area; tenderness on pressure of the L-4, 5, and S-1 area; right sciatic irritability with limitation of straight leg raising; and hyperesthesis of L-4, 5 dermatome on the right as well as sciatic irritation. The final diagnosis was traumatic sciatic neuritis right with acute low back strain.

A letter written by Dr. Dineen on December 27, 1966, to the Ideal Cement Company states that Billy Rooks was discharged by him to Rooks' regular job without disability. He stated further that the patient had made a successful recovery from the organic condition but had developed functional difficulties. For this reason Dr. Dineen referred claimant to Robert A. Moore, M.D., a specialist in neurological surgery.

A report from Dr. Moore states, "I examined this pt. 12/28 and found no back muscle spasm, and no organic cause of his complaints of dizziness."

A letter from R. T. Sinclair, Jr., M. D., to Ideal Cement Company states it is his opinion based on a December 22, 1966 examination that Rooks suffered no permanent disability and is able to return to work.

On January 23, 1967, a neurological examination of claimant was conducted by Gordon S. Dugger, M.D., a Board-certified specialist in neurological surgery. Dr. Dugger concluded:

"I strongly suspect that this patient's difficulties are on a functional basis. I personally have had no success whatsoever in treating this kind of difficulty. Neither in my experience has it been helped by psychiatric consultation. Its resolution will be most rapidly expedited, I should think, by settlement of the patient's claims."

Claimant was examined on April 7, 1967 by Samuel E. Warshauer, M.D., a Board-certified specialist in internal medicine. Dr. Warshauer concluded:

From the paucity of objective neurological findings, it is likely that he suffers from conversion hysteria with partial paralysis of the lower extremities. This, of course, is disabling and the treatment of it is very difficult.

A report made on April 26, 1967 by Thomas Craven, M.D., gave a diagnosis of chronic sprain of lumbar spine, minimal, and extreme superimposed functional and emotional overlay.

A report, dated July 19, 1967, from G. R. C. Thompson, M.D., gave diagnosis of sprain of back with developed ruptured disc syndrome. He found claimant had tenderness to pressure over the L3–5 with pain produced into both legs to the heels and both lumbar muscles were said to be tender to pressure.

George T. Tindall, M.D., a Board-certified specialist in neurological surgery, examined claimant on referral from Dr. Thompson. After a thorough examination, Dr. Tindall made the following report to Dr. Thompson on August 16, 1967:

The lumbar myelogram was within normal limits. A differential spinal examination was done to evaluate his pain and this indicated that his pain was most likely on an organic basis. Dr. Frank Bassett, of the Orthopedic Service, saw him for evaluation. He examined his back and legs under an-

esthesia and found that there was severe restriction of motion in his hamstrings. For this reason, I referred him to the Physical Therapy Department so that they can teach him hamstring stretching exercises and I think for the next several weeks or perhaps months he should go on a regime of trying to accomplish this, that is, hamstring stretching. I definitely do not feel that he has a structual lesion in his lumbar spine that would be benefitted by surgery.

On August 23, 1967 claimant was given a psychiatric examination by James F. McMillan, M.D., a specialist in psychiatry. He reported that Rooks was neither psychotic nor neurotic and was in good contact.

In the record there is a "statement of attending physician" made to the Durham Life Insurance Company, dated March 14, 1968, and signed by Dr. Thompson. Dr. Thompson stated that claimant had been continuously and wholly disabled from work or following his occupation or profession since October 30, 1966. The length of time he would be continuously and wholly prevented from pursuing any and all gainful occupation was stated to be "undetermined at this time."

A letter dated January 19, 1968, from David P. Thomas, M.D., to Dr. George Roundtree, Sr., reports the result of an examination by Dr. Thomas. He found "some evidence of muscle spasm of the back associated with limited motion and failure of the lumbar curve to reverse on flexion of the back." He states that surgery would not be helpful.

At the hearing, John B. Reckless, M.D., a Board-certified specialist in psychiatry, testified as a medical advisor to the Hearing Examiner. He testified in part:

* * * I am saying the objective medical evidence of the neurosurgeon and orthopedic surgeon, indicates the patient does have a condition which could give pain, but not pain to the

level to cause the impairment of function which the patient is claiming.

He also testified:

[A]ll we can expect in terms of improvement rotates around the patient's motivation, his willingness to recognize that he does have back discomforture, that he is going to continue to have back discomforture and this back discomforture is likely to increase unless motivational exercises upon his own part he is willing to tolerate the pain that is going to be caused by a resumption of physical activity. In other words, it comes down to a direct question of motivation. Again, I want to make the point that the thing that will stop him will be pain. If he simply cannot tolerate pain there is nothing any physician or surgeon can do. But again, there is no objective organic basis. So, if the patient is willing to tolerate the pain and go forward, then I think there is a possibility that he can continue to improve as his testimony indicates he has been improving over the past six months.

Following the hearing, Prescott B. Spigner, Jr., M.D., a specialist in orthopedic surgery, examined claimant. In his initial report, Dr. Spigner stated:

There are no findings to substantiate this man's complaints which are indeed multiple. He may have rheumatoid arthritis, but I feel that this should be investigated further, and certainly the latex fixation should be repeated. If after further determination in this line it is felt that he does not have rheumatoid arthritis, I would say that he is probably malingering.

In a subsequent report dated August 22, 1968, Dr. Spigner stated:

Bill Rooks had repeat sed rates and RA test on August 22, 1968. His sed-rate was 8mm. and his RA test was negative. I do not feel that he had any real serious back problems.

Roy N. Anderson, Ph.D., a vocational expert, testified at the hearing on job vacancies in the area for light and sedentary work. He described many of these types of employment which were available in claimant's area and which were suited to claimant's age, education, and work experience.

From all of the testimony, reports, and documents the hearing examiner found that the claimant, despite his mild impairment, has the ability to engage in light and sedentary work and that such is available to claimant in the area of his residence.

■ This court in reviewing the Secretary's decision, may not set it aside if such decision is supported by substantial evidence. Willis v. Gardner, 377 F.2d 533 (4th Cir. 1967); Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962). If there is substantial evidence to support the decision of the Secretary, this court's inquiry must end. Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966); Celebrezze v. Bolas, 316 F.2d 498 (8th Cir. 1963). This court finds that the decision of the hearing examiner is supported by substantial evidence.

■ Claimant alleges that the severity of the pain prevents his resumption of full time employment. Pain can be a disabling affliction. Brandon v. Gardner, 377 F.2d 488 (4th Cir. 1967). In this case, however, there is substantial evidence indicating that claimant's pain is not so severe as to preclude light and sedentary work. No doctor on examination of claimant could discover an organic problem which would cause pain of the severity claimant describes. Several doctors reported at the outset that claimant could return to work. The hearing examiner's medical advisor, considering pain from both organic and functional causes, stated that he did not think the pain was so severe that claimant could not engage in light and sedentary work. The only evidence presented shows that light and sedentary work is available in the area of claimant's residence. In short, while there is evidence to the contrary, the decision of the Secretary is supported by substantial evidence.

As a further matter, claimant also alleged that visual difficulties disable him within the meaning of the Social Security Act. While the evidence shows claimant had 20/200 vision in one eye, it also shows that his vision was 20/20 in the other eye. Claimant has had this visual defect in one eye since an early age. The medical evidence by all sources conclusively shows that claimant is not disabled by reason of visual difficulties. The decision of the hearing examiner is overwhelmingly supported by substantial evidence on this matter.

For the foregoing reasons, the motion for summary judgment filed on behalf of the Secretary is hereby granted.