James Kenneth SHIVELY, Appellant,

v.

Margaret M. HECKLER, Secretary of Health and Human Services, Appellee.

No. 83–2122.

United States Court of Appeals, Fourth Circuit.

Argued April 2, 1984.

Decided Aug. 2, 1984.

Rehearing and Rehearing In Banc Denied Aug. 28, 1984.

Hazel A. Straub, Charleston, W.Va. (Franklin W. Kern, L.C., Charleston, W.Va., on brief), for appellant.

Marye L. Wright, Asst. U.S. Atty., Charleston, W.Va. (David A. Faber, U.S. Atty., Charleston, W.Va., on brief), for appellee.

Before HALL, ERVIN and CHAPMAN, Circuit Judges.

CHAPMAN, Circuit Judge:

James Kenneth Shively appeals the decision of the Secretary of Health and Human Services finding that he is not entitled to a period of disability and to disability insurance benefits under Sections 216(i) and 223 of the Social Security Act as amended, 42 U.S.C. §§ 416(i) and 423. This case is before the court for the second time. In *Shively v. Schweiker,* 681 F.2d 816 (1982) a panel remanded the case, instructing the administrative law judge (ALJ) to reexamine a vocational expert's report which indicated that claimant suffered from impaired manual and finger dexterity and to reconsider the evidence concerning Shively's nonexertional pain and anxiety. Finding that on remand the ALJ considered everything that was required by our prior decision and that the Secretary's decision is supported by substantial evidence, we affirm the denial of claimant's application for disability benefits.

I

Shively, fifty-six years old at the time of the most recent supplemental hearing, has a tenth grade education. When tested in 1978 he received a full-scale I.Q. score of 97 which is within the average range of intelligence. For approximately twenty-three years he worked for one construction company as a heavy equipment mechanic. He testified that he was "one of the top shop mechanics" at this construction company.

According to claimant, his inability to work began as a result of a work-related back injury that occurred in September 1977. He has not worked since that time. In addition to his back pain, Shively claims to suffer from depression, neurosis, headaches, dizziness, memory difficulties, paranoia, loss of finger and manual dexterity, chest pains, dysthymic disorder, dependent personality disorder and a moderate degree of impairment in the ability to respond to appropriate supervision or customary work pressures and to perform complex tasks. Since 1977 claimant has been examined by numerous doctors. The record contains reports from eight different physicians, five psychiatrists and two psychologists as well as reports from Shively's chiropractor. The medical evidence supports the contention that claimant's activity is limited due to his musculoskeletal condition. The various doctors differ, however, in their conclusions with regard to the degree of severity of Shively's impairment. There are predictably reports in the record in which the doctors conclude that claimant is totally and permanently disabled. There are other reports indicating that Shively should be able to perform sedentary and light activities on a sustained basis. For example, the April 1978 recommendation of an orthopedic surgeon who examined Shively was that "based on clinical and x-ray findings, this man is a good candidate for light work." In a report dated March 1978, claimant's chiropractor indicated on a form that Shively would be able to return to work on April 1, 1978. In March 1978 a psychiatrist stated that he felt that claimant could not "do sustained work at present." The doctor

also concluded, however, in his prognosis that claimant "should be fair with treatment" and that Shively could sustain light work which "includes lifting a *maximum* of 25 pounds with *frequent* lifting and carrying of objects up to 10 pounds, walking and standing, and/or sitting while operating arm and hand controls." A June 1978 report from the office of the same psychiatrist included the observation that "[i]t is interesting to note that Mr. Shively stated that he is not able to sit longer than forty-minutes maximum at a time; however, he was able to sit for over an hour without complaint of or noticeable discomfort while being tested."

At the supplemental hearing held in October 1982 claimant testified that the pain in his back was more frequent and worsened with activity, that he experienced pain in his hips and legs also, that he was more forgetful than before, that he became dizzy sometimes, that he could not tolerate noise, that he sometimes suffered a "strangling sensation," that his forefinger and thumb went numb and that he suffered stiffness in the mornings. He also testified that he had headaches of two to three hours duration three or four times a week.

■ A vocational expert who testified at the hearing was asked by the administrative law judge to assume that claimant could lift twenty pounds occasionally and ten pounds frequently with no particular problems, that range of motion of his extremities was reduced, that claimant could not work in an unusually stressful situation and that the pain suffered by claimant was not so sufficiently severe and intractable as to prevent claimant from engaging in substantial gainful activity. In response to the hypothetical question the vocational expert testified that there were several jobs which claimant could perform including those of service clerk in an automobile dealership or as a parts clerk in the retail sale of automobile parts. The expert fur-

ther testified that claimant possessed skills which were transferable.[1]

II

The narrow questions to be decided are whether the instructions of this court were followed on remand and whether there is substantial evidence to support the finding that claimant was not entitled to a period of disability and disability insurance benefits. Substantial evidence is defined as "... evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'" *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966) (citations omitted).

■ Claimant raises three principal points in his contention that the ALJ failed to follow the court's mandates and that the decision to deny benefits is not supported by substantial evidence. First, claimant argues that the ALJ ignored the medical evidence of pain. Examination of the ALJ's order, however, refutes this contention. Stating that "[t]he question of Mr. Shively's pain appears to be the central issue in this case," the ALJ proceeded to evaluate the claims of severe, debilitating pain. The ALJ found that although the claimant "probably does have a significant amount of pain," Shively appeared to maximize the pain at the hearings. The hearing officer concluded that "[t]o the extent that his testimony would indicate that his pain is so severe and intractable as to prevent him from engaging in any substantial gainful activity, the Administrative Law Judge finds it not to be credible." Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight. *Tyler v. Weinberger*, 409

---

1. Because of claimant's nonexertional impairments, the vocational expert's testimony is to be relied on instead of the "grids."

F.Supp. 776 (E.D.Va.1976). As the ALJ observed, the medical evidence dealing with claimant's range of motion was based on Shively's own complaints of pain. Claimant's allegations that he suffered such severe pain are not supported by x-rays or neurological findings. He has never been hospitalized for his back pain or other ailments. At the prior supplemental hearing, claimant indicated that the medication he was taking for pain was Extra Strength Tylenol and Extra Strength Excedrin, both nonprescription medicines. At the latest supplemental hearing, claimant testified that he was taking Nalfon, which the *Physician's Desk Reference* describes as an analgesia for treatment of mild to moderate pain, prescribed for relief from acute flairs of rheumatoid arthritis and osteoarthritis. The ALJ observed that stronger medications could have been prescribed. We find that the ALJ did not ignore or rule out Shively's nonexertional pain but instead properly considered this factor as instructed by the court.[2]

■ Claimant's second argument is that the ALJ did not adequately consider the report of the vocational consultant, Robert Williams, who concluded that due to claimant's "impairments, the virtual loss of manual and finger dexterity, and considering work history" he did not "feel that there [were] jobs, existing in substantial numbers, regardless of physical demand, that [Shively] could perform." The ALJ did, however, evaluate the significance of this report.[3] He concluded that the report indicated that the consultant did not fulfill the traditional role of a vocational expert—determining and evaluating skills and relating these skills to possible employment—but instead simply concluded that claimant was disabled. Moreover, Williams' conclusions in regard to Shively's manual and finger dexterity are directly contradicted by other evidence in the record. The April 1980 report of a physician, Dr. Fritzhand, included a physical capacities evaluation in which the doctor indicated on the form that the claimant was able to use his right and left hands for repetitive action such as "SIMPLE GRASPING," "PUSHING AND PULLING OF ARM CONTROLS" and "FINE MANIPULATION." "The Secretary, and not the courts, is charged with resolving conflicts in the evidence, and it is immaterial that the evidence before him will permit a conclusion inconsistent with his." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir.1964) (citation omitted).

■ Finally, claimant contends that the ALJ did not follow the mandate of the prior panel because he did not ask Phyllis Shapero, the vocational expert who testified at the hearing, questions concerning claimant's manual dexterity and his nonexertional pain and anxiety. We find this argument unconvincing because, following the two questions posed by the ALJ, Shively's attorney asked Shapero numerous questions involving hypotheticals based on claimant's view of the evidence. Although it might have been prudent for the ALJ to pose the questions himself, any possible

---

**2.** The ALJ also considered the claims related to anxiety. He observed that "[Shively's] psychiatric problems do appear to be sufficiently severe to rule out jobs which require dealing with large numbers of people or which are otherwise unusually stressful."

**3.** After reviewing the conclusions of Williams' report, the ALJ stated:

In his report Mr. Williams says he assumes that the medical conditions set forth in one of the findings in the prior decision exist without any indication of how severe he assumed them to be. He went on to say that results of the Pegboard Test indicated a severe medical problem. Just how he arrived at that is not clear. He also somehow uses the Pegboard Test to indicate that the claimant couldn't work more than one-half an hour without rest. Although Mr. Williams called his report a vocational evaluation, his conclusion is simply that the claimant is disabled. There is no indication that he even saw the medical evidence or that he has any particular expertise in evaluation of medical evidence. It is especially interesting that in the vocational area itself he does not appear to have considered whether or not the claimant had any transferable skills. He really didn't function at all as a vocational expert, having already decided that the claimant couldn't work at anything. The report seems to be simply an exercise in forensics.

defect was cured by the attorney's questions. The prior panel's opinion did not include an instruction for the ALJ to pose particular questions at the hearing but instead instructed him to reexamine certain evidence and to permit a full cross-examination of the vocational expert. These mandates were fulfilled.

Accordingly, the decision of the Secretary is

AFFIRMED.

K.K. HALL, Circuit Judge, dissenting:

I disagree with the majority's conclusion that the ALJ did not ignore the medical evidence of pain in this case. In addition, I think that the majority has misinterpreted the law as to the ALJ's personal observations. I, therefore, dissent.

Subjective pain may serve as the basis for establishing disability, even if such pain is unaccompanied by positive clinical findings or other "objective" medical evidence. *E.g., Thorne v. Weinberger,* 530 F.2d 580 (4th Cir.1976); *Brandon v. Gardner,* 377 F.2d 488 (4th Cir.1967). The majority asserts that the ALJ evaluated Shively's claims of severe, debilitating pain but decided to discredit his testimony. Of course, I agree that "[b]ecause the [ALJ] had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning those questions are to be given great weight."

At 989. In my view, however, that statement is inapplicable to this case because the ALJ did not consider the credibility of Shively's claims of disabling pain. Rather, the ALJ merely assumed that claimant's pain was not "so severe and intractable as to prevent him from engaging in any substantial gainful activity." The plain language of the ALJ's decision reveals that he discounted Shively's claims of disabling pain because they were unsupported by objective evidence and because of his personal observations made during the hearing.[1] This was error.

Shively testified he suffered from severe and debilitating back pain. He stated that the pain was located around his belt line and radiated through his neck, shoulders, hips and legs. He described the pain as sharp, causing him "almost [to] go in two." He said he was unable to sit too long at a time, and, in fact, he had to get up and stand during part of one administrative hearing, which lasted one hour and nineteen minutes. Shively also testified that the pain occurs at least five days in a week, or more often, and that at times it interferes with his ability to wash his face. He said he cannot tie his shoes and needs help taking his pants on and off. Shively further stated he took up to eight extrastrength Datril 500 or six to nine extrastrength Excedrin daily for pain.[2] He said that because of the pain, he is unable to turn his head and, consequently, does not

---

1. The pertinent language from the ALJ's decision reads as follows:

   [Shively] didn't show much sign of pain at either of the supplemental hearings. The entire record considered together indicates that a desire for secondary gain is a significant part of the claimant's pain syndrome. He probably does have a significant amount of pain, but he appeared to maximize it at the hearings. To the extent that his testimony would indicate that his pain is so severe and intractable as to prevent him from engaging in any substantial gainful activity, the Administrative Law Judge finds it not to be credible. If his complaints of pain were completely disregarded, there would be very little in the evidence to support any significant musculoskeletal impairment. Neither the x-rays nor the neurological findings support it, aside from the claimant's symptoms.

2. Both the ALJ and the majority belittle the medical treatment of Shively's pain, but they are not medical experts. The undisputed evidence is that Shively is taking at least 11 different medications. I would defer to the judgment of Shively's doctors for the proper combination of drugs for Shively's system.

   I also think that the ALJ and the majority ignore the realities of life confronting a claimant in Shively's position. Shively testified that when his doctor asked him what pain medication he was taking, Shively told his doctor that the non-prescription medication was "good enough." Shively explained that "the doctor's prescription is just pretty darn expensive, that [he couldn't] afford very expensive medicine.... [T]here's no income."

drive. Claimant's wife corroborated his testimony, and their testimony was uncontradicted.

Moreover, although the ALJ found, and the majority agreed, that there was little in the evidence to support any musculoskeletal impairment, the medical evidence unequivocally established that the claimant suffers from a back impairment. The x-rays of Shively's lumbosacral spine clearly revealed osteoarthritic changes, spurring, and narrowing of the C6–C7 interspace. Shively's treating physician said that the neurological findings were suggestive of "herniated disc of the lumbar spine," and his conclusion is not contradicted. I can only conclude that neither the ALJ nor the majority understands the x-ray and neurological evidence in this case.

In an effort to support their decision, both the ALJ and the majority rely on a 1978 psychological report. That report contains the comment of a clinical psychologist that "Shively stated that he is unable to sit longer than forty-minutes maximum at a time; however, he was able to sit for over an hour without complaint of or noticeable discomfort while being tested." All of the *medical* doctors, however, who examined Shively for lumbar motion, found that he had difficulty bending forward, and none of these doctors suggested that Shively's complaints of pain were not real.[3]

To the contrary, on examination, some of the physicians noted that Shively was tender to palpitation, and claimant's treating physician reported that Shively was "quite swollen and tender over the mid dorsal spine to palpation. There is an area of about 3 × 5 cm at the mid dorsum which is swollen and red and warm to touch ...." An orthopedic surgeon further noted that Shively was "quite uncomfortable. He walked with some stiffness of the body and carried his head and neck in a guarded fashion. He was seated and arose from the sitting position with the aid of his hand." The record thus contains ample evidence that Shively suffers from pain; yet, the ALJ failed to make any findings concerning the degree of pain which claimant suffered.[4]

As for the ALJ's statement that Shively did not show much sign of pain at either of the supplemental hearings, I conclude that the ALJ erred as a matter of law in rejecting Shively's otherwise relevant testimony on pain and suffering simply because of the claimant's failure to "sit and squirm." *Tyler v. Weinberger*, 409 F.Supp. 776, 789 (E.D.Va.1976). As we held in *Brandon*, "pain unaccompanied by any objectively observable symptoms which is, nevertheless, *real to the sufferer and so intense to be* disabling will support a claim for disability benefits." *Id.*, 377 F.2d 488, 490. The ALJ ignored Shively's subjective evidence of pain because of what he believed to be weak objective findings and because of his observations made during the supplemental hearings. This contradicts our holding in *Thorne* that subjective evidence of pain "when found to exist must be considered seriously." *Id.*, 530 F.2d 580, 583 (4th Cir. 1976).

As the majority acknowledges, the severity of Shively's pain was "central" to the

---

3. Furthermore, under the circumstances of this case, Shively should be afforded substantial credibility as a witness to his own work capabilities. *Vitek v. Finch*, 438 F.2d 1157, 1159 (4th Cir.1971). He worked for 23 years as a heavy equipment mechanic, earning substantial wages. He injured his back in 1957 and returned to work. He injured his back a second time in the 1960's and returned to work. Unfortunately, when he injured his back a third time in 1977, he was unable to return to work. On these facts, I can see absolutely no basis whatsoever for the ALJ's conclusion "that a desire for secondary gain is a significant part of the claimant's pain syndrome."

4. At page 6, the majority quotes from the ALJ's decision out of context when it says that the ALJ found that Shively "probably does have a significant amount of pain." In concluding that Shively is not disabled because of back pain, the ALJ reasoned first that: "[Shively] didn't show much sign of pain at either of the supplemental hearings" and two sentences later the ALJ says that Shively "probably does have a significant amount of pain, but he appeared to maximize it at the hearing." I find this logic to be contradictory. In sum, the ALJ found that Shively has no pain.

ALJ's decision that Shively was not disabled. The vocational evidence revealed that no jobs existed in the national economy for someone with Shively's impairments who had the additional limitation of severe pain. Based upon all of the evidence, I conclude that the ALJ failed to evaluate the severity of Shively's back pain. Accordingly, I would reverse the district court.