861 F.2d 264
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Randolph S. INGRAM, Plaintiff-Appellant,
v.
Otis R. BOWEN, Secretary, Department of Health and Human
Services, Defendant- Appellee.
 No. 88-3920.
 United States Court of Appeals, Fourth Circuit.
 Submitted: Aug. 19, 1988.
Decided: Oct. 11, 1988.
 
 Belinda S. Morton, on brief, for appellant.
 Beverly Dennis, III, Chief Counsel, Region III, Department of Health and Human Services; Charlotte Hardnett, Chief, Social Security Litigation Division; Dorothea Lundelius, Supervisory Assistant Regional Counsel; Michael W. Carey, United States Attorney; Stephen M. Horn, Assistant United States Attorney, on brief, for appellee.
 Before HARRISON L. WINTER, Chief Judge, and SPROUSE and WILKINS, Circuit Judges.
 PER CURIAM:
 
 
 1
 Randolph S. Ingram appeals from a district court order affirming the denial of social security disability and supplemental security income benefits. We affirm.
 
 I.
 
 2
 Ingram is a "younger person"[1] who suffers from multiple impairments as the result of various injuries. In 1963 he broke his right wrist, causing no significant deformity or loss of motion. In 1969 he sustained a gunshot wound in his left shoulder, causing permanent nerve damage to the second, third, and fourth fingers of his left hand. In 1980 he received a medical discharge from the Army with a ten percent disability due to stress fractures in both knees. His knee condition was diagnosed in 1984 as mild chondromalacia,[2] but he retained good range of motion. He also injured his neck in an automobile accident in 1980, but while degenerative changes in the cervical spine were indicated on x-rays, he had almost a full range of motion with no atrophy of the surrounding muscles.
 
 
 3
 Ingram is a high school graduate with limited vocational training. He worked as a laborer from 1969 through 1974 and subsequently as a coal miner, truck driver, and shipping clerk. He was last employed as an automotive service salesman from November 1983 to January 1984, when he ceased working.
 
 
 4
 Ingram filed applications for disability and SSI benefits on January 20, 1984, alleging disability from degenerative arthritis of the cervical spine and residual impairment of his left hand. After Ingram was denied benefits initially and on reconsideration, he requested an administrative hearing. The administrative law judge (ALJ) found that Ingram suffered from severe impairments of the cervical neck and the left hand, precluding him from performing his past work. The ALJ further found that Ingram's capacity for a full range of light work was reduced, but not significantly compromised, by the impairment of his left hand. The ALJ concluded, after applying the medical-vocational guidelines (grids), 20 C.F.R. Part 404, Subpart P, Appendix 2, that Ingram was not disabled and denied benefits. After the Appeals Council denied review, Ingram sought judicial review in the district court. On recommendation of the magistrate, the district court reversed the denial on the ground that Ingram's impairment of his left hand was nonexertional and precluded conclusive application of the grids. See Grant v. Schweiker, 699 F.2d 189 (4th Cir.1983). The case was remanded to the Secretary with directions to receive vocational expert testimony and to determine whether any jobs existed that Ingram could perform despite his limitations.
 
 
 5
 On remand, the ALJ received additional medical evidence and heard testimony from a vocational expert. In answer to a hypothetical question from the ALJ which posited the impairments and limitations evidenced in the medical records, the expert testified that such a person "could perform some light as well as sedentary occupations," including salesclerk, cashier, dispatcher, and general office clerk. Based on the vocational expert's testimony of available jobs which Ingram could perform, the ALJ found that Ingram was not disabled and recommended that benefits be denied. The Appeals Council accepted that recommendation and denied benefits. On further judicial review, the district court affirmed the denial of benefits.
 
 II.
 
 6
 Under the Social Security Act, the scope of judicial review of the final decision of the Secretary is limited to whether, based on the record as a whole, the decision is supported by substantial evidence. 42 U.S.C.A. Sec. 405(g) (West 1983); Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence is:
 
 
 7
 '[E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence." '
 
 
 8
 Shively v. Heckler, 739 F.2d 987, 989 (4th Cir.1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir.1966) (citations omitted)). It is clear that the medical evidence, including reports from orthopedic specialists, substantially supported the ALJ's findings of multiple impairments. However, the disputed issue is the extent of Ingram's associated pain.
 
 
 9
 Ingram asserts that the ALJ ignored his complaints of constant severe pain in his head, sharp back pain, and pain in his shoulders and knees. To the contrary, the ALJ considered Ingram's subjective complaints of pain but found them exaggerated and "only credible to the extent that work activity beyond the light level is precluded." Since the ALJ had the opportunity to observe the demeanor and determine the credibility of Ingram, his finding on the question of pain must be given great weight. Shively, 739 F.2d at 989.
 
 
 10
 The ALJ's discrediting of Ingram's complaints of severe neck pain is supported by the medical evidence and Ingram's work history. Although x-rays showed minimal degenerative changes to the cervical spine, there was no change in that condition from 1980 to 1984. An orthopedic surgeon noted in March 1984: "The patient in spite of his complaints and grunting and groaning during the examination fails to show any significant changes in the cervical spine on the x-rays." In addition to this medical evidence, the ALJ noted that although Ingram's complaints of neck pain date back to 1975, he worked at various jobs with duties ranging from heavy to light until 1984.
 
 
 11
 Likewise Ingram's other complaints are not supported by the medical evidence. The orthopedic surgeon was unable to identify a cause of Ingram's alleged low back pain and diagnosed the knee condition as mild. Ingram had good range of motion of the shoulders. And his previously fractured right wrist had healed without residual impairment.
 
 
 12
 On review of the record as a whole, we hold that the ALJ's findings of Ingram's impairments and pain are supported by substantial evidence. The vocational expert's testimony, in response to a hypothetical question based on the findings of the ALJ, substantially supported the finding that there are jobs which Ingram can perform given his limitations, and that he is not disabled.
 
 
 13
 AFFIRMED.
 
 
 
 [1]
 A "younger person" is one under 50 years of age. 20 C.F.R. Secs. 404.1563(b) and 416.963(b) (1988)
 
 
 [2]
 Chondromalacia is the softening of the articular cartilage, here in the patella. Dorland's Illustrated Medical Dictionary 310 (25th ed. 1974)