39 F.3d 1176
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
James Michael DEVINE, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 94-1338.
 United States Court of Appeals, Fourth Circuit.
 Submitted: Aug. 9, 1994.
Decided: Nov. 15, 1994.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Herbert F. Murray, Senior District Judge. (CA-92-2514-HM)
 James Michael Devine, Appellant Pro Se. Robert Drum, United States Department of Health & Human Services, Philadelphia, PA, for Appellee.
 D.Md.
 AFFIRMED.
 Before HALL, WILKINSON, and WILKINS, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 James M. Devine brings this action pursuant to 42 U.S.C.A. Sec. 405(g) (West Supp.1994), seeking review of the final decision of the Secretary of Health and Human Services denying his claim for supplemental security income and disability insurance benefits under the Social Security Act. After independently reviewing the entirety of the evidence, we agree with the district court's conclusion that substantial evidence supports the Secretary's decision, and that the decision was correct under controlling law. We therefore affirm.
 
 I.
 
 2
 Devine, who was born in 1952, is a high school graduate who completed three years of college. His past relevant work experience includes work as a mason, a drywall hanger and finisher, and a mechanic. He ceased work in September 1988 because he allegedly could not hold a hammer because of a ganglion cyst on his left wrist and a problem with his right finger.
 
 
 3
 The Secretary denied Devine's application initially and on reconsideration. Devine then requested a hearing before an administrative law judge (ALJ). The hearing was conducted on February 21, 1991. Devine, who appeared pro se, testified, as did a vocational expert (VE). Following the hearing, the ALJ issued a decision finding that Devine was capable of performing work which did not require him to lift more than ten pounds and which did not require fine manual dexterity. Because there were a significant number of jobs in the regional economy which an individual such as Devine could perform, the ALJ determined that Devine was not disabled. The Appeals Council denied Devine's request for review of the ALJ's decision, which became the final decision of the Secretary.
 
 
 4
 Devine then brought the subject lawsuit. A magistrate judge issued a report recommending that the Secretary's decision be upheld. After considering Devine's objections, the district court entered judgment for the Secretary. Devine timely appealed.
 
 II.
 
 5
 Devine alleged that his left wrist was injured when he was handcuffed too tightly for a few minutes in 1984. Dr. Metzner, Devine's private physician, examined Devine shortly after the incident. Dr. Metzner found that Devine had excellent muscle function in the left hand. Some tenderness in the left wrist and paresthesia in two fingers of the left hand were noted. The physician believed that Devine had sustained a superficial injury to a nerve and that the injury would heal within three months. A neurological examination conducted one month after Devine was handcuffed produced normal results.
 
 
 6
 In the intervening four years, Devine worked at jobs requiring constant use of his hands and the lifting and carrying of up to 150 pounds. He saw Dr. Metzner twice during this four-year period for problems unrelated to his hands.
 
 
 7
 In September 1988, Devine complained to Dr. Metzner about pain in his right index finger. Dr. Metzner noticed a small lump near a joint on that finger; however, Devine's range of motion in that finger and his grip strength were good. Minimal tenderness was noted. In January 1989, Dr. Metzner completed a medical report to be used to help determine if Devine was eligible for public assistance. Dr. Metzner commented in a report to Maryland's Division of Vocational Rehabilitation that Devine had developed a ganglion cyst on his left wrist and had an inflammation of the right index finger. While the conditions temporarily limited Devine to light work, Dr. Metzner stated that Devine was nonetheless able to work.
 
 
 8
 A neurologist who evaluated Devine described the ganglion cyst as very small and noted that such cysts generally are of no consequence. No neurological dysfunction was noted, and Devine's strength in both arms was excellent. The only slight abnormality noted was a popping tendon in the right index finger.
 
 
 9
 Dr. Brooks, an orthopedic surgeon confirmed that the cyst was inconsequential: it was very small and not tender. X-rays of the wrist were otherwise normal, but an x-ray of the finger revealed the lump to be a foreign body, which Dr. Brooks surgically removed. The wound healed well and, within two weeks, Dr. Brooks approved Devine for all work he could perform within the limits of normal post-operative pain, which was expected to last for up to two weeks. No future work restrictions were given. Dr. Brooks recommended no treatment for Devine's "occasionally painful" cyst unless it became large and symptomatic.
 
 
 10
 Devine saw Dr. Brooks again in August 1989. Dr. Brooks observed that Devine still was tender over his finger. Also noted was minimal loss of flexion. However, Dr. Brooks would give Devine only a ten percent disability of the finger.
 
 
 11
 Dr. Milford, a hand specialist, saw Devine because of his continued complaints of pain and inability to work. Dr. Milford thought that a ligament complex near the finger might have been disrupted. Surgery to relieve Devine's pain was scheduled. It was not anticipated that surgery would improve Devine's slightly limited range of motion but would alleviate Devine's pain. Devine postponed the scheduled surgery because of a claimed insurance dispute.
 
 
 12
 In December 1989, Devine saw another specialist, Dr. Herrera, about his finger. Dr. Herrera determined that Devine had a deviated tendon which could be surgically corrected. He stated that Devine retained full work capacity.
 
 
 13
 Shortly before the hearing before the ALJ, Devine returned to Dr. Milford, apparently for the first time since he postponed surgery scheduled for October 3, 1989. Dr. Milford determined that the ruptured ligament had healed itself. Although there still was some popping when Devine closed his finger, he had a full range of motion. Dr. Milford stated that while Devine had some pain, particularly when he rode a bicycle, the pain did not seem significant.
 
 
 14
 The ALJ determined that Devine's subjective complaints were exaggerated and inconsistent with the objective medical evidence and Devine's daily activities. With regard to Devine's complaint of pain, we note that no doctor stated that Devine's pain was significant. Devine's complaints of disabling pain were discounted in part because of his daily activities, which included caring for his basic needs and bicycling. He even rode a bicycle to the hearing. Further, there was no evidence that Devine took any prescription or nonprescription medications for his alleged pain. See Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir.1994). Given this properly supported credibility determination, we will not disturb the ALJ's finding. See Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir.1984).
 
 
 15
 The ALJ determined that Devine was able to perform light work not requiring fine dexterity. The applicable regulations would have directed a finding of not disabled for an individual such as Devine. However, because of Devine's nonexertional impairment, the regulations were not dispositive, but could serve merely as a guideline. Testimony from a VE was required. See Walker v. Bowen, 889 F.2d 47, 49-50 (4th Cir.1989). The VE who testified at Devine's hearing stated that jobs which Devine could perform existed in the regional economy. Those jobs included approximately 2000 light gross assembly jobs and 5000 light hand packaging jobs. Neither of these jobs required fine manual dexterity or the ability to lift more than ten pounds.
 
 III.
 
 16
 We review the Secretary's final decision to determine whether it is supported by substantial evidence and whether the correct law was applied. 42 U.S.C. Sec. 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir.1987). Upon independent review of the evidence in this case, we agree with the district court that substantial evidence supports the Secretary's decision, which is correct under controlling law. Accordingly, we affirm the judgment of the district court.
 
 AFFIRMED