**Shirley J. SMITH, Plaintiff,**

v.

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant.**

**Civ. A. No. 88–677–N.**

United States District Court, E.D. Virginia, Norfolk Division.

June 3, 1991.

L. David Lindauer, Portsmouth, Va., for plaintiff.

Susan L. Watt, Asst. U.S. Atty., Norfolk, Va., for defendant.

ORDER

CLARKE, District Judge.

This matter comes before the Court on the plaintiff's objections to the Magistrate Judge's Report and Recommendation. The Court has conducted a *de novo* review of the portions of the Report and Recommendation to which the plaintiff objects, pursuant to 28 U.S.C. § 636(b)(1)(C). In the Court's view, all of the objections raised by the plaintiff were very adequately addressed by the Magistrate Judge in his well-reasoned and detailed Report and Recommendation. The Court therefore adopts the Report and Recommendation of the Magistrate Judge. For the reasons stated in the Magistrate Judge's Report and Rec-

ommendation, the final decision of the Secretary of the Department of Health and Human Services is AFFIRMED, the plaintiff's Motion for Summary Judgment is DENIED, and the defendant's Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

WILLIAM T. PRINCE, United States Magistrate Judge.

Plaintiff brought this action under 42 U.S.C. § 405(g) (West 1983) seeking judicial review of the decision of the Secretary of Health and Human Services denying her claim for disability insurance benefits. Plaintiff and defendant both filed Motions for Summary Judgment. The matter was referred to the undersigned United States Magistrate Judge for recommendations for the dispositions of said motions, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B)

and (C) and Rule 29 of the Rules of the United States District Court for the Eastern District of Virginia.

## STATEMENT OF THE CASE

By order dated March 24, 1989, this Court remanded this matter to the Secretary of Health and Human Services for further development of the record and findings regarding plaintiff's eligibility for disability benefits as of June 30, 1982.[1]

## PROCEDURAL BACKGROUND

On April 2, 1987, plaintiff applied for disability insurance benefits alleging disability as of June 30, 1982 pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, *et seq.* (West Supp.1990).[2] The Secretary of the Department of Health and Human Services ("Secretary") denied disability benefits in initial and reconsideration determinations for this claim.[3] Plain-

---

1. Plaintiff's insured status for disability benefits expired on June 30, 1982.

2. Plaintiff has an extensive history of seeking disability benefits following an injury she sustained in 1976. The initial decision by Administrative Law Judge Robert E. Sears indicates the following procedural history for plaintiff's claims.

 On October 25, 1977, the claimant filed an application for a period of disability and disability insurance benefits alleging disability since May 19, 1976, due to a back injury, left elbow injury, hypertension and a pinched nerve in the right hand. That application was denied by the Administration in an initial determination in Novvember [sic] 1977. On March 14, 1978, the claimant filed another application for a period of disability and disability insurance benefits alleging disability since May 19, 1976. In April 1978, the Administration denied that application in an initial determination. On October 18, 1978, the claimant filed another application for a period of disability and disability insurance benefits which was denied by the Administration in an initial determination in December 1978. On September 27, 1979, the claimant filed another application for a period of disability and disability insurance benefits. That application was denied by the Administration in initial and reconsideration determinations. The claimant did not appeal the reconsideration determination. Instead on June 12, 1986, she filed another application for a period of

disability and disability insurance benefits alleging disability from July 1, 1976. On August 4, 1986, the Administration denied that application in an initial determination. On August 21, 1986, the Administration issued a reconsideration determination finding the claimant 'not disabled.' The claimant did not appeal the reconsideration determination. Instead, she filed a new application for a period of disability and disability insurance benefits on April 2, 1987, alleging disability since July 1, 1976. That application was denied by the Administration in initial and reconsideration determinations.

 *See In the Case of Shirley J. Smith,* Recommended Decision of A.L.J. Robert E. Sears, Dept. of Health and Human Services Social Security Administration Office of Hearings and Appeals Decision at 2–3 (March 31, 1988) ("*A.L.J. Decision I*").

3. The Secretary's determination is comprehensive and involves consideration of the following five steps:

 (1) Whether the claimant is currently engaged in substantial gainful activity;

 (2) If not, whether she has a severe impairment;

 (3) If so, whether that impairment meets or equals the medical criteria of Appendix 1, warranting a finding of disability without considering vocational factors;

 (4) If not, whether the impairment prevents her from performing her past relevant work;

tiff then sought review by an Administrative Law Judge ("A.L.J."), and a hearing was held on November 2, 1987 before A.L.J. Robert E. Sears. Judge Sears denied plaintiff's request for disability benefits on March 31, 1988. Next, the Appeals Council of the Department of Health and Human Services denied plaintiff's request for discretionary review on September 2, 1988.

Plaintiff filed suit in this Court on October 5, 1988 pursuant to 42 U.S.C. § 405(g) seeking judicial review of the Secretary's final decision. Both parties filed Motions for Summary Judgment. Judge J. Calvitt Clarke, Jr. of this Court issued a Memorandum Opinion and Order dated March 24, 1989 that resolved certain issues in plaintiff's complaint while also remanding particular matters to the Department of Health and Human Services.

On April 26, 1989, the Appeals Council remanded the case to A.L.J. Sears. A hearing was held with the parties on June 14, 1989 to resolve the outstanding issues. On September 27, 1989, A.L.J. Sears addressed the remanded matters and again denied disability benefits to plaintiff. On September 19, 1990, the Appeals Council denied plaintiff's request for discretionary review. Both parties again filed Motions for Summary Judgment.

## FACTUAL BACKGROUND

### A.L.J. Sears' First Decision and Facts

The first administrative hearing in this case addressed the basic question on plaintiff's eligibility for disability benefits, based upon the existence of a disability of sufficient duration on or before June 30, 1982—the date that plaintiff's insured status for disability benefits expired.

Plaintiff's history of medical problems, developed initially at the first hearing and supplemented at the second, shows that at the time plaintiff was last eligible for benefits she was 47 years old, a "younger person" as defined in 20 C.F.R. §§ 404.1563(b), 416.963(b). From 1971 to 1976, she worked as a processor in a factory making television sets. Her job consisted of opening the door to a mold machine, reaching inside and removing the television frame, which weighed at most 12–15 pounds, shaving off the rough edges, and hanging the frame on an overhead hook. Record at 20, 37–40.[4] Plaintiff traces her disability largely to an accident that occurred at this job in 1976, when a television cabinet fell on her and injured her left forearm and elbow and her lower back. After this incident, she went back to work for two weeks but has not worked since. R. 41–43. Besides this injury, plaintiff states that she is disabled due to a number of conditions including angina pectoris, severe back pain, high blood pressure, diabetes, degenerative arthritis of the spine, vascular problems including collapsed veins and edema, hernia, and a spastic colon, most of which appear to be exacerbated to some extent by her obesity. R. 20–24.

After the first hearing, the A.L.J. concluded that plaintiff was incapable of performing her past work because of severe restrictions in her ability to lift due to chronic lumbosacral strain, degenerative changes of the lumbosacral and cervical spine, mild intermittent pain, hypertension, obesity, a history of bilateral carpal tunnel syndrome, and arthritis, but that she did not have an impairment or combination of impairments which reached the level required for presumed disability under 20 C.F.R. § 404, Subpart P, Appendix 1, Listing 10.10 ("10.10"). R. 29. This decision was based at least in part of the A.L.J.'s erroneous characterization of plaintiff's exogenous obesity as being *per se* remediable. R. 26. The A.L.J. further concluded that while plaintiff's capacity for sedentary work was reduced somewhat by intermit-

---

(5) If so, whether the claimant is able to perform other work considering both her remaining physical and mental capacity and her vocations capacities to adjust to a new job. See *Jones v. Sullivan*, 738 F.Supp. 991, 994–95 (E.D.Va.1990); *see also* 20 C.F.R. § 404.1520–404.1599 & Apps. 1, 2 (1990). If the claimant is determined to be "disabled" or "not disabled" at any step, further evaluation is not required. *Jones,* 738 F.Supp. at 994.

4. References to the record will be hereinafter cited as "R. ___".

tent pain prior to June 30, 1982, she retained the functional capacity for some types of sedentary work such as tube testing, and was therefore not entitled to disability benefits.

### A.L.J.'s Second Decision

On remand, the A.L.J. was instructed to take and evaluate further evidence concerning the disabled status of plaintiff, based on her obesity and the existence of one of several impairments as specified in § 10.10. A.L.J. Sears was to specifically address whether plaintiff's obesity was reasonably remediable, and if not, identify the listed impairments and compare them to plaintiff's symptoms which accompanied her obesity.

At the second hearing, A.L.J. Sears took testimonial evidence from plaintiff, her daughter, and a medical advisor, Dr. Baker, and admitted additional medical records and other documents into the record. Most of plaintiff's and her daughter's testimony concerned the severity of plaintiff's symptoms and the pain she experienced, as well as her various efforts to lose weight and her difficulties in doing so. The medical advisor stated in his testimony that he believed plaintiff had made a reasonable effort to remedy her obesity, and he also evaluated plaintiff's functional capacity based on the evidence in the record, finding a number of restrictions on her ability to perform sedentary work during the relevant time period, including difficulty in standing and sitting for long periods and limitations on motion.

The A.L.J. concluded that plaintiff had made a reasonable effort to remedy her obesity, and that her weight met the requirements of § 10.10. The Appeals Council determined that she did not weigh above the specified amount on the C.F.R. tables for a continuous period of twelve (12) months; therefore, it ruled that she did not meet the threshold weight requirement in § 10.10. A.L.J. Sears also found that plaintiff's obesity was not accompanied by sufficiently severe symptoms of any of the other impairments in § 10.10 to justify a finding of disability. The A.L.J. discounted the medical advisor's testimony on functional capacity and made similar findings and conclusions as in the first administrative decision: that plaintiff had severe impairments including chronic lumbosacral strain, degenerative changes of the cervical spine, mild intermittent pain, high blood pressure, obesity, bilateral carpal tunnel syndrome, and arthritis, but that she did not have an impairment or combination of impairments that was sufficient under the listings; and she retained the functional capacity to perform certain types of sedentary work prior to June 30, 1982 and was therefore not entitled to disability benefits. The Appeals Council affirmed these findings and conclusions.

## REMANDED ISSUES

The issue for resolution is whether substantial evidence exists to support the Secretary's finding that plaintiff was not "disabled" for purposes of disability insurance benefits on June 30, 1982. In order to show plaintiff's disability, the essential factual question is whether plaintiff's alleged obesity, other severe impairments, or related functional limitations rendered her incapable of performing *any* gainful work in the local and national economy as of June 30, 1982.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### I. *Scope of Judicial Review*

For purposes of the Motions for Summary Judgment, the Court takes as true all facts and material allegations of the non-moving party and construes them in the light most favorable to the non-moving party. *Jenkins v. McKeithen,* 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

Under 42 U.S.C. § 405(g), the scope of judicial review of the Secretary's final decision is specific and narrow. *Smith v. Schweiker,* 795 F.2d 343, 345 (4th Cir.1986). The Court's analysis is limited to a determination of whether the Secretary's decision

is supported by substantial evidence. *Flowers v. United States Dept. of Health & Human Services*, 904 F.2d 211, 212 (4th Cir.1990); *Hines v. Bowen*, 872 F.2d 56, 58 (4th Cir.1989); *Jones v. Sullivan*, 738 F.Supp. 991, 994 (E.D.Va.1990). The Supreme Court defined "substantial evidence" as that which "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). The Fourth Circuit has characterized "substantial evidence" as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

*Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir.1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966) (citations omitted)).

Ultimately, it is the duty of the Administrative Law Judge reviewing a claim for benefits, and not the court's, to make findings of fact and to resolve conflicts in the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir.1990); *King v. Califano*, 599 F.2d 597, 599 (4th Cir.1979). The Administrative Law Judge's determination is then reviewed by the Appeals Council of the Department of Health and Human Services who subsequently renders the Department's "final" decision.[5] *See Lovejoy v. Heckler*, 790 F.2d 1114, 1116 (4th Cir.1986) (noting that an Appeals Council decision reversing a prior determination by an Administrative Law Judge became the Secre-

tary's "final" decision); *Kellough v. Heckler*, 785 F.2d 1147 (4th Cir.1986); *Parris v. Heckler*, 733 F.2d 324 (4th Cir.1984). Therefore, the Court does not conduct a *de novo* review of the evidence nor of the Secretary's finding of nondisability. *Schweiker*, 795 F.2d at 345–46.

## II. *Analysis of plaintiff's allegations under 20 C.F.R. § 404.1520*

To obtain social security disability benefits, plaintiff bears the burden of proving the existence of a disability. 42 U.S.C. § 423(d)(5) (Supp.1990); 20 C.F.R. § 404.-1512 (1990); *Hall v. Harris*, 658 F.2d 260 (4th Cir.1981); *Smith v. Califano*, 592 F.2d 1235, 1236 (4th Cir.1979). The Social Security Act defines "disability" as the "inability to engage in *any* substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (emphasis added); 20 C.F.R. § 404.1505 (1990). Plaintiff establishes a prima facie case of disability if she shows that she is unable to perform her past regular work. 20 C.F.R. § 404.1520(e) (1990); *Flowers*, 904 F.2d at 214. The burden then shifts to the Secretary to show there is work in the local or national economy that the individual can perform.[6] 20 C.F.R. § 404.1520(f) (1990); *Taylor v. Weinberger*, 512 F.2d 664, 666 (4th Cir.1975).[7] Plaintiff's last date where she was insured for disability insurance benefits was June 30, 1982. Accordingly, she must show that she was totally disabled from gainful employment on or be-

---

5. The Appeals Council may produce a written decision or simply summarily deny a claimant's request for disability insurance benefits. If the Appeals Council makes determinations contrary to the factual findings of the Administrative Law Judge, these findings become the "final" factual findings of the Secretary of the Department of Health and Human Services for purposes of judicial review. *See Lovejoy v. Heckler*, 790 F.2d 1114, 1116 (4th Cir.1986) (*citing Kellough v. Heckler*, 785 F.2d 1147 (4th Cir.1986) and *Parris v. Heckler*, 733 F.2d 324 (4th Cir. 1984)).

6. The type of work that an individual may perform depends upon his age, education, work experience, skills, and physical deficiencies. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir.1976).

7. *See also id.* (noting that the Secretary must prove the following to meet its burden: "(1) that the claimant, considering his age, education, work experience, skills, and physical shortcomings, has the capacity to perform an alternative job and (2) that this specific type of job exists in the national economy").

fore this date in order to be entitled to disability benefits.

A. *Whether the claimant is currently engaged in substantial gainful activity?*

B. *If not, whether she has a severe impairment?*

■ Given the five prong analysis utilized to review these claims,[8] A.L.J. Sears determined that plaintiff has not been engaged in substantial gainful activity since her alleged onset of disability. *In the case of Shirley J. Smith,* Recommended Decision of A.L.J. Robert E. Sears, Dept. of Health and Human Services, Social Security Administration at 3 (Sept. 27, 1989) (*"A.L.J. Decision II"*) (also found at R. 383–88). Additionally, he determined in the first administrative proceeding that plaintiff had severe impairments consisting of a chronic lumbosacral strain, degenerative changes of the lumbosacral and cervical spine, mild intermittent pain, hypertension, obesity, bilateral carpal tunnel syndrome, and arthritis prior to June 30, 1982. *Id.* The Appeals Council did not overrule these findings. *Decision of Appeals Council,* Department of Health and Human Services, Social Security Administration at 2 (Sept. 19, 1990) (*"Appeals Council Decision II"*). As A.L.J. Sears pointed out, Judge Clarke affirmed this finding from his first decision and that no contrary evidence or testimony was presented regarding these findings. *Id.* Given the volume of evidence supporting plaintiff's severe impairments and the uncontested fact that plaintiff is not currently engaged in substantial gainful activity, the Court finds that substantial evidence exists to support the Secretary's conclusion. *See Flowers v. United States Dept. of Health & Human Services,* 904 F.2d 211, 212 (4th Cir.1990).

C. *If the claimant has a severe impairment, whether that impairment meets or equals the medical criteria of Appendix 1, warranting a finding of disability without considering vocational factors?*

■ Having met the first and second prong of the disability analysis, the A.L.J. next ascertained whether the claimant's severe impairments, individually or in any combination, were of sufficient magnitude to meet or equal the medical criteria for a presumed disability as set forth in the Listing of Impairments contained in Appendix 1, Subpart P, Regulations No. 4 ("Appendix 1") without consideration of other vocational factors. *Id.* at 2; *see also supra* n. 3. In *A.L.J. Decision I,* A.L.J. Sears found that plaintiff's obesity was *per se* remediable and, therefore, could not constitute a presumed disability. Judge Clarke of this Court disagreed with this finding citing several cases[9] and remanded this issue for further inquiry by the A.L.J. with the request for particularized findings regarding whether plaintiff's obesity was reasonably remediable and, if not, whether her obesity in combination with her other problems, met the requirements of § 10.10 of Appendix 1.[10]

---

**8.** *See supra* n. 3.

**9.** *See, e.g., Hammock v. Bowen,* 867 F.2d 1209, *amended and superseded on other grounds,* 879 F.2d 498 (9th Cir.1989); *McCall v. Bowen,* 846 F.2d 1317 (11th Cir.1988); *Lovelace v. Bowen,* 813 F.2d 55 (5th Cir.1987); *Johnson v. Secretary of Health and Human Services,* 794 F.2d 1106 (6th Cir.1986); *Stone v. Harris,* 657 F.2d 210, 212 (8th Cir.1981).

**10.** A.L.J. Sears concluded that plaintiff had made a reasonable effort to remedy her obesity. Dr. Baker, the medical advisor, testified that plaintiff had made reasonable efforts to lose weight during the relevant time periods, but that her various physical problems made them ultimately unsuccessful. R. 419–21. There was

no showing that any specific instructions to lose weight were given to plaintiff, nor was any particular weight loss program prescribed for plaintiff prior to 1982, although several of the treating physicians made reference to the necessity of controlling plaintiff's obesity. R. 288–89, 303. Although most of the documentary evidence offered described plaintiff's weight loss attempts after 1982, including visits to weight loss clinics and undergoing surgery, (R. 455–56), the record contains nothing that suggests that plaintiff refused to follow a course of treatment for obesity that would restore her ability to work and justify a denial of benefits. Therefore, the Secretary's conclusion that plaintiff made reasonable efforts to lose weight is supported by substantial evidence, and his further consideration of plaintiff's obesity in combina-

Section 10.10 of Appendix 1 indicates that the claimant must have a weight equal to or greater than the values specified in Table I or II for their particular height. If a claimant meets the height/weight requirements in Table I or II, she must additionally meet or equal one of the following criteria in order to have a presumed obesity disability:

A. History of pain and limitation of motion in any weight bearing joint or spine (on physical examination) associated with X-ray evidence of arthritis in a weight bearing joint or spine; or

B. Hypertension with diastolic blood pressure persistently in excess of 100 mm. Hg. measured with appropriate size cuff; or

C. History of congestive heart failure manifested by past evidence of vascular congestion such as hepatomegaly, peripheral or pulmonary edema; or

D. Chronic venous insufficiency with superficial varicosities in a lower extremity with pain on weight bearing and persistent edema; or

E. Respiratory disease with total forced vital capacity equal to or less than 2.0 L or a level of hypoxemia at rest equal to or less than the values specified in Table III–A or III–B or III–C.

*See* 20 C.F.R. § 404, Subpt. P, App. 1, § 10.10.

1. *Did plaintiff meet the height/weight requirement contained in Table II?*

■ A.L.J. Sears' task on remand was to determine if plaintiff suffered from an obesity disability. Under § 10.10, the first inquiry to determine if a claimant has a presumed obesity disability is consideration of her height and weight. The C.F.R. provision contains a table of heights and weights that specify the particular combinations that justify a finding that plaintiff suffers from obesity. *See* 20 C.F.R. § 404, Subpt. P, App. 1, § 10.10, Table II.

Dr. James P. Baker, a medical expert but a non-treating physician, testified that plaintiff was 4' 11" and that her weight had fluctuated between 179 and 240 pounds. At 4' 11", a female claimant must weigh at least 224 pounds to satisfy the height/weight requirements in Table II. A.L.J. Sears noted that plaintiff weighed 225 pounds in September 1977 and determined that she had met the height/weight requirements of § 10.10(A). *See* R. 229. Defendant argues that § 10.10 requires a claimant to meet the twelve (12) month durational requirement in 20 C.F.R. § 404.-1509. 20 C.F.R. § 404.1509 provides that a claimant must show that her disability "must have lasted or must be expected to last for a continuous period of at least 12 months." Neither decision by A.L.J. Sears directly addresses the issue of whether the durational requirement contained in 20 C.F.R. § 404.1509 applies to height/weight tables contained in § 10.10.

Instead, as defendant argues, the Appeals Council disagreed with the finding of A.L.J. Sears that plaintiff satisfied the threshold criteria of Listing § 10.10.[11] *See* Defendant's Reply Brief in Support of Motion for Summary Judgment at 2 (Dec. 27, 1990); *see also* R. 380–81 (a copy of *Appeals Council Decision II* ). Defendant argues that "[t]he Council then completely reviewed the medical record and concluded that Smith's weight had fluctuated significantly over the time period in question, and thus, the medical records did not establish that Smith's weight was at or above 224 pounds 'for any continuous period of at least 12 months beginning on or before

---

tion with the other impairments specified in § 10.10 was appropriate.

11. In his Brief in Support of his Motion for Summary Judgment at 5, defendant observed, "The Administrative Law Judge noted that Smith's weight of 225 pounds (in September 1977) satisfied the threshold criteria of Listing § 10.10 for a woman of Smith's height (i.e., 4' 11" and 224 pounds or more) (R. 385)." Plaintiff interprets this statement in the following

unjustified and misleading manner: "The Secretary, at page 5 of his Brief, concedes 'that Smith's weight of 225 pounds (in September 1977) satisfied the threshold criteria of Listing § 10.10 for a woman of Smith's height (i.e., 4' 11" and 224 pounds or more) (R. 385).' " *See* Plaintiff's Supplemental Reply Brief at 3 (Dec. 24, 1990). The Secretary simply noted what A.L.J. Sears stated in his decision but hardly conceded that this finding was correct.

June 30, 1982.'" Defendant's Reply Brief at 2 (citing *Appeals Council Decision II*) (footnote omitted).

Plaintiff cites two cases where a claimant only met the height/weight requirements of Table I or II on one occasion yet were deemed to have sufficiently satisfied this provision; therefore, she argues that she does not have to meet the height/weight requirement in Table II for a continuous period of twelve (12) months.[12] However, these cases do not appear to directly address the question raised by the defendant in this action.

■ Under the provisions of § 10.10, plaintiff's means of proving obesity requires her to show that she met the height/weight requirements and suffered from at least one of the conditions found in §§ 10.-10(A)–(E). Like any other severe impairment, a claimant must meet the requirements of 20 C.F.R. § 404.1509 to establish a presumed obesity disability. *See* 42 U.S.C. § 423(d)(1)(A) (stating that a "disability" is the "inability to engage in any substantial gainful activity by reason of *any medically determined physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.*") (emphasis added); 20 C.F.R. § 404.1505. Thus, plaintiff must show that her severe impairment of obesity "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509. Given the criteria utilized by § 10.10 to evaluate a presumed obesity disability, the claimant must specifically meet the durational requirement of 20 C.F.R. § 404.1509 with regard to the height/weight threshold inquiry.

The pertinent portion of the decision of the Appeals Council is as follows:

While the Administrative Law Judge concluded that the claimant's weight met the weight requirements of Section 10.10 of the Listing under which she is required to weigh at least 224 pounds because of her height of 59 inches, he cited only the reported weight of 225 pounds noted in September 1977. The Council's review of the medical evidence indicates that the claimant's weight did not remain at or above the required 224 pounds for any continuous period of at least 12 months beginning on or before June 30, 1982 when she last met the disability insured status requirements. Although her weight was 225 pounds on September 23, 1977, she weighed only 209 pounds on July 30, 1977 (Exhibit 31). On January 17, 1979 she weighed 225 pounds and during the period from July 13, 1979 to August 7, 1979, her weight was recorded at 225 to 229½ pounds (Exhibit 43). However, there are no records of her weight in medical evidence from 1976 (Exhibits 29, 30, and 38) or 1978 (Exhibits 32, 33, 34, 35 and 36) and the records after August 7, 1979 show her weight was 220 pounds or less through March 1980 (Exhibit 43 and 47). There are no reports regarding the claimant's weight after March 1980 until September 1983 (Exhibit 51), well after the date she was last insured.

*Appeals Council Decision II* at 1–2 (also listed as R. 380–81). Thus, the "final" determination of the Secretary was that plaintiff did not meet the height/weight requirements in Table I or II. The Court agrees with this conclusion that plaintiff did not prove she met the height/weight requirements for a continuous period of twelve (12) months, and the Appeals Council's evaluation of plaintiff's weight history, as articulated above, certainly provides substantial evidence to support this conclusion. *See Flowers*, 904 F.2d at 212. Therefore, plaintiff did not suffer from a presumed obesity disability under § 10.10.

■ However, this conclusion does not complete the Secretary's inquiry regarding the plaintiff's obesity. Instead, the Secretary must "consider the combined effect of a claimant's impairments" to determine if plaintiff, nonetheless, has a disability. *Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) (citations omitted); *Walker v. Bowen,*

---

**12.** *See Pitzer v. Sullivan*, 908 F.2d 502 (9th Cir. 1990); *Johnson v. Secretary of Health and Human Services*, 794 F.2d 1106, 1110 (6th Cir. 1985).

889 F.2d 47, 49–50 (4th Cir.1989) ("[i]t is axiomatic that disability may result from a number of impairments which, taken separately, might not be disabling, but whose total effect, taken together, is to render claimant unable to engage in substantial gainful activity .... [therefore] the Secretary must consider the combined effect of a claimant's impairments and not fragmentize them"). Thus, the inability of a claimant to meet the height/weight requirements in Table I or II does not serve as a fatal defect to her disability insurance benefits claim because the combined effect of the claimant's impairments governs the Secretary's ultimate decision. *Id.; see also Reichenbach v. Heckler*, 808 F.2d 309, 312 (4th Cir.1985). The Secretary must also make an inquiry into whether plaintiff's impairments or combination of impairments are the medical equivalent of one listed in App. 1, Subpt. P, Reg. No. 4. *Walker*, 889 F.2d at 49–50.

Thus, the Court's review necessarily requires consideration of the underlying provisions of § 10.10 to determine the extent of plaintiff's obesity problems. While plaintiff did not suffer from a presumed disability, she still could suffer from an obesity impairment that could combine with her other severe impairments to produce a disability that rendered her incapable of returning to her past relevant work or any other gainful employment in the local or national economy.

2. *Under § 10.10(A), did plaintiff suffer from a history of pain and limitation of motion in any weight bearing joint or spine (on physical examination) associated with X-ray evidence of arthritis in a weight bearing joint or spine?*

▮ With regard to § 10.10(A), A.L.J. Sears made the following findings:

... The medical records during this period of time reveal that the claimant did complain of low back pain and some neck discomfort. X-rays made in August 1976 showed moderate degenerative changes of the lower cervical spine, although the lumbar spine appeared normal (Exhibit 29). Accordingly, she does have x-ray

evidence of changes of the spine, although it is the cervical spine and not the lumbar spine which was the area of which she complained the most. Subsequent progress notes from Shalom Y. Abboudi, M.D., the claimant's orthopedic surgeon, are consistent with this. He does report some evidence of discomfort and some restriction of motion in the lower lumbar spine related to a lumbosacral strain and obesity. However, with regards to the cervical spine, his reports of discomfort are not persistent and the record indicates that she had an essentially full range of motion in the cervical spine (Exhibits 33, 38, 41, 44, 45, 48). This is also consistent with the report of A.A. Kirk, M.D., from December 1976 (Exhibit 30). Inasmuch as the medical evidence does not show limitation of motion of her cervical spine, she does not meet or equal the criteria for disability as set forth in Section 10.10(A).

*A.L.J. Decision II* at 4 (R. 385). The Appeals Council affirmed this finding. *See Appeals Council Decision II* at 2 (R. 381).

Plaintiff contends that she met the requirements in § 10.10(A). She cites numerous excerpts from her medical records contained in the record to indicate that she suffered from a history of pain and limitation in her lumbosacral and cervical spine. *See* Plaintiff's Supplemental Reply Brief at 3–8 (Dec. 24, 1990). Given these and other uncited references, plaintiff argues that the record clearly indicates that she suffered from pain and limitation of motion in her cervical and lumbar spine sufficient to meet or equal the requirements of § 10.-10(A) and contrary to A.L.J. Sears' finding. *Id.* at 8.

Plaintiff also argues that pain itself can cause limitation of motion. *See* Social Security Ruling 90–1P. She maintains that the record contains testimony regarding her pain sufficient to conclude that she also suffered limitation of motion. *See* R. 431, 461, 464, and 473.

Finally, plaintiff contends that she satisfied § 10.10(A) under step three in the sequential evaluation process by establishing a "severe impairment" under step two.

Plaintiff's Supplemental Brief at 15 (Dec. 7, 1990). Citing *Bowen v. Yuckert*, 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), defendant correctly argues that plaintiff "is mistaken in asserting that the ALJ's finding that she had 'severe' impairments was 'a finding that she met the listing under § 10.10(A).'" Defendant's Reply Brief at 2–3. *Yuckert* dealt with the validity of step two of the sequential evaluation process requirement that a claimant's impairment(s) must be "severe." The Supreme Court held that the Secretary could mandate that a claimant make a threshold showing that her impairment is medically severe enough to interfere with her ability to work before her age, education, and experience will be considered. *Yuckert*, 482 U.S. at 150–53, 107 S.Ct. at 2295–97. Therefore, A.L.J. Sears' acknowledgment of plaintiff's "severe impairments consisting of chronic lumbosacral strain, degenerative changes of the lumbosacral and cervical spine, mild intermittent pain, hypertension, obesity, bilateral carpal tunnel syndrome, and arthritis prior to June 30, 1982"[13] simply meets or equals the threshold requirements in step two of the sequential evaluation process and does *not* mean that plaintiff has necessarily established a step three presumed disability under § 10.-10(A) because of her severe impairment of obesity.

Defendant argues that Dr. Natalio, a treating physician, furnished a medical report regarding plaintiff's condition to Disability Determination Services dated December 10, 1978. *See* R. 245–49 (Exhibit 35). In his report, Dr. Natalio indicated that plaintiff's "[r]ange of motion of the elbows and other joints are unrestricted with no apparent joint abnormalities except those noted by Dr. Abboudi.[14] X-rays of the lumbar spines are normal taken 6–2–76." R. 245. (footnote added). He also reported that she had "no limitation of range of motion of the extremities or on bending over." R. 246. Therefore, defendant argues that plaintiff failed to meet or equal the requirements set forth in § 10.-10(A).

In addition to Exhibit 35 cited by defendant to disavow pain and limitation in plaintiff's spine or other weight bearing joint, A.L.J. Sears cited Exhibits 29, 30, 33, 38, 41, 44, 45, and 48 to support his conclusion that plaintiff did not have limitation of motion in either her lumbar or cervical spine.

Exhibit 38 contains Dr. Abboudi's "Attending Physician's Report" filed with the Industrial Commission of Virginia dated July 12, 1976. R. 271. Dr. Abboudi indicated his observations as "[p]ain at end of neck flexion.... Power and reflexes upper and lower limbs equal. Restricted forward flexion of lumbosacral spine." *Id.* He diagnosed her problems as "[d]egenerative arthritis, neck. Acute lumbosacral strain...." directly attributable to the television cabinet falling on her at work. *Id.* In addition, Dr. Abboudi noted that plaintiff had a disability for work that began May 18, 1976 that would indefinitely affect her ability to return to light or regular work. *Id.*

Exhibit 29,[15] hospital records from Maryview Hospital for plaintiff's admittance from August 12, 1976 to August 23, 1976, include several significant entries. A Department of Radiology report from Dr. Fay I. Carr, Jr. indicates the following:

CERVICAL SPINE: The cervical curvature and vertebral body alignment is normal. There is mild narrowing of the C–5—C–6 interspace with some moderate lipping of the adjacent vertebral body margins. There is also mild lipping of the margins at C6–C7 but no associated narrowing. The posterior lipping results in moderate encroachment on the C5–C6 and C6–C7 intervertebral foramina on the right, and the intervertebral foramina on the left are clear. The articular facets have a normal configuration and symmetrical alignment.

13. R. 384.

14. Dr. Shalom Y. Abboudi examined plaintiff in August 1976 and ordered x-rays taken of her

cervical and lumbar spine. R. 225. The Court discusses Dr. Abboudi's observations *infra*.

15. R. 217–25.

LUMBAR SPINE: AP and lateral films show the vertebral body heights and interspaces to be well maintained. The alignment is anatomic and the posterior elements intact.

IMPRESSION: MODERATE DEGENERATIVE CHANGES OF THE LOWER CERVICAL SPINE AS DESCRIBED. NORMAL APPEARING LUMBAR SPINE WITH NO INTERVAL CHANGE SINCE AN EXAMINATION IN JUNE.

R. 221. In the same report, Dr. Abboudi's Admission Note indicates that she complained of pain in the lower lumbar area and that a "[p]hysical examination revealed a decreased range of motion of her spine, and full range of motion of the cervical spine, with pain at the end of motion." R. 224. He further noted that "[s]he has been complaining of pain in the neck, and in the lower back, mostly in the lumbar area." *Id.* Regarding her limitation of motion, Dr. Abboudi concluded that plaintiff had straight leg raising capacity of 80 degrees bilaterally, that she could bend forward and reach her knees on forward flexion of the spine, and that she was restricted side-to-side. *Id.*

The same exhibit also contains Dr. Abboudi's "Discharge Summary" following plaintiff's eleven day stay in the Maryview Hospital. *See* R. 225. This summary indicates that "[x]-rays of the elbow and back were performed which were within normal limits." *Id.* Dr. Abboudi again acknowledged plaintiff's complaints of pain in the back and other areas. *Id.* Given plaintiff's complaints, his physical examination, and the x-ray results, Dr. Abboudi concluded:

Examination of the back revealed some slight tenderness in the lower lumbar area with restriction of forward flexion. She can only touch her knees. Straight leg raising is 80 degrees bilateral. The power reflexes in both lower extremities appear to be within normal limits.... X-rays of the cervical spine in the hospital revealed degenerative changes of the C5–6 and C6–7 intervertebral space with moderate encroachment in the C5–C6 area on the right. The intervertebral

foramen on the left are clear. The lumbar spine series were within normal limits.

FINAL COMPLETE DIAGNOSIS: Acute lumbosacral strain.

R. 225.

As part of Exhibit 38, Dr. Abboudi wrote a letter to Gay & Taylor, an insurance company, dated September 21, 1976. R. 269–70. In this letter, he traced plaintiff's medical history from July 1976 to September 1976 as follows:

... On July 28, 1976, her back was still sore. On physical examination, she had restricted motion of her back and straight leg raising was to 90 degrees. Power and reflexes in the upper and lower extremities was equal....

On August 11, 1976, her back was no better with pain radiating into both hips. She also complained of neck pain with headaches. On physical examination, straight leg raising was to 80 degrees and power and reflexes were equal bilaterally. There was restricted forward flexion of the spine. It was felt that she should be admitted to the hospital for further treatment.

She was admitted to Maryview Hospital on August 12, 1976. She was placed on bed rest, pelvic traction, and physical therapy and improved. She was discharged from the hospital on August 23, 1976.

Mrs. Smith was last seen in the office on September 14, 1976. She said her back continued to hurt with pain radiating into both legs, especially the right leg, and into the foot area.

She stated she tried to return to work but they would not take her back because of the restrictions on her work. She obtained a lumbosacral corset which helps her back. On examination, there was tenderness in the mid lumbosacral area. Straight leg raising was to 70 degrees bilaterally. Power and reflexes were equal bilaterally. Sensation was decreased along the lateral side of the right knee. She was advised to continue using her back brace.

It was felt that the patient is unable to return to work at this time. Medication

was prescribed and she was advised to return in four weeks.

R. 269–70.

Exhibit 38 also contains a letter from Dr. Abboudi to Gay & Taylor, Inc. dated October 15, 1976. In responding to their inquiry, Dr. Abboudi informed them that:

... Mrs. Smith has degenerative arthritis of the cervical spine. She is not complaining significantly about that area but she has been unable to work on account of continued pain in the lower lumbar area which I felt was due to a lumbosacral strain following her injury on May 18, 1976.

Please refer to my letter of September 21, 1976 at which time I stated that this patient was allowed to return to work with some restrictions regarding lifting heavy weights and bending but she was not taken back on account of those restrictions. I will be seeing Mrs. Smith again soon for a visit and I will let you know of her condition.

R. 268.

Next, in Exhibit 30, Dr. A.A. Kirk, an associate of Dr. Abboudi, issued a consultation letter following a visit by the plaintiff on December 13, 1976. Dr. Kirk stated that "[s]he has a steady ache in her low back and is worse on sitting, standing, bending forward, and on lying flat on her back since the injury in May when a television cabinet fell off the line on her at work." R. 226. Following a physical examination, he observed that

She had normal lower extremities motions and no limited straight leg raising.... She was tender over the lumbosacral joint area. She was tender over the sacrococcygeal joint.

X-rays of her lumbosacral spine and coccyx revealed spina bifida occulta of the first sacral vertebra, a few small anterior lumbar spurs, and the coccyx and sacrum were within normal limits.

DIAGNOSIS: 1. Mild low back strain. 2. Coccygodynia, at the sacrococcygeal joint.

The patient has a lumbosacral support and it was my opinion that she could return to work.

She was seen again on January 20, 1977, at which time she did not want the sacrococcygeal joint injected. She was advised to return if she desired the injection. She was also advised to wear the lumbosacral support.

R. 226–27.

In a letter dated February 3, 1977 contained in Exhibit 38, Dr. Abboudi wrote Mrs. S.S. Jones, an Assistant Branch Manager at Gay & Taylor, Inc. regarding his examinations of the plaintiff since October 15, 1976. R. 264. Regarding pain and limitation in her spine, Dr. Abboudi remarked that:

On October 25, 1976, she stated her back still hurts and bothers her when she sits up for a while for some time.... On physical examination she flexed fairly well and could reach to about four inches from the floor. Side to side bending was restricted. Straight leg raising was eighty degrees bilaterally. Power and reflexes were equal of both upper and lower limbs. She was advised to return to work as of October 26, 1976. She was seen again on December 1, 1976, at which time her back was not better and she still had back pain with pain down the right leg which was worse on sitting.... On physical examination she was tender over the lumbosacral spine area. Straight leg raising was sixty degrees on the right and eighty degrees on the left. Power and reflexes were equal. Sensation was all right....

She was seen again on January 19, 1977, at which time her back still hurt and she had not gone back to work. She had no leg pain. On physical examination she had full flexion of her spine and she could touch the floor on forward flexion. Straight leg raising was ninety degrees bilaterally and power and reflexes were equal.

She was advised by Doctor Kirk to return if she desired to have an injection of her sacrococcygeal joint.

R. 264–65.

In a letter in Exhibit 38 dated May 17, 1977 to Mrs. Gloria S. Pablo, Supervisor of Insurance Benefits at General Electric, plaintiff's former employer, Dr. Abboudi indicates his findings following a physical

examination on May 11, 1977. R. 262–63. He reported that plaintiff complained of pain in her back and that the examination revealed that "[s]he could reach to three inches below her knees on forward flexion. Straight leg raising was eighty degrees bilaterally. Power reflexes were equal." R. 262. Dr. Abboudi again indicated his diagnosis of plaintiff as chronic lumbosacral strain and concluded that "I believe this patient has reached maximum benefits and has a permanent partial disability rated as ten percent of her body as a whole. (Covers her back and left elbow)" *Id.*

Exhibit 38 also contains a medical report from Dr. Abboudi dated November 2, 1977. R. 260–61. In this medical report, he continues to diagnose plaintiff's problems as lumbosacral strain, degenerative arthritis of the neck, low back strain, and coccygodynia at the sacrococcygeal joint. R. 261.

Exhibit 33, another medical report by Dr. Shalom Y. Abboudi dated March 29, 1978, describes plaintiff's relevant medical history as follows:

> 01/12/78—Mrs. Smith still complaining of pain in her back and sometimes going into her legs, but usually in her lower back that varies from fairly good on one day to fairly bad on other days.... Her physical examination remains essentially unchanged. She is an obese white female with restricted range of motion of her back, secondary to her pain and abdominal size. Straight leg raising is 90 degrees bilaterally. Power and reflexes in both lower extremities are equal and symmetrical.

R. 236. Following his clinical evaluation of the plaintiff, Dr. Abboudi diagnosed her impairments as lumbosacral strain, degenerative arthritis of the neck, low back strain, coccygodynia at the sacrococcygeal joint, and carpal tunnel syndrome. R. 237.

In Exhibit 41, a medical report dated October 22, 1979, Dr. Abboudi updated plaintiff's medical history and utilized this information to conclude that plaintiff was unable to return to work. R. 278–82. Dr. Abboudi made the following notations regarding plaintiff's back and limitation of motion:

She said that at times her lower back hurt particularly when she had to do any kind of work. When she would sit relatively quiet, her back would not bother her as bad.... Physical examination revealed restricted range of motion of her cervical spine particularly her rotation from side to side. There was some pain toward the end of flexion extension.... X-rays of the cervical spine revealed degenerative changes involving C5–6 mostly and to some extent C6–7.

DIAGNOSIS: Bilateral carpal tunnel syndrome. Degenerative arthritis of the cervical spine.

There were no real changes as far as the previous recommendations regarding this patient.

R. 278. He further diagnosed her as suffering from lumbosacral strain, degenerative arthritis of the neck, low back strain, and coccygodynia at the sacrococcygeal joint. R. 280.

Exhibit 45 is a general medical report by Dr. Abboudi dated January 14, 1980. In this report, Dr. Abboudi again diagnosed plaintiff's impairments as bilateral carpal tunnel syndrome, lumbosacral strain, degenerative arthritis of neck, low back strain, and coccygodynia at the sacrococcygeal joint following examinations and X-rays of the plaintiff. R. 297. Dr. Abboudi then restated her medical history from January 12, 1978 to November 21, 1979 as described in detail above. R. 298–300.

In Exhibit 48, a letter dated January 29, 1980,[16] Dr. Abboudi chronicles plaintiff's medical history and apparently changed his mind regarding her ability to perform work.

> In my opinion this woman can go back to work that does not require her to do prolonged sitting for more than three hours at a time or lift weights heavier than ten pounds. General Electric [plaintiff's former employer] has been unable to provide that kind of work for her that she could do and therefore, she has not really been able to go back to work. With regards to her hands, I think she made a good recovery from her [carpal tunnel syndrome] surgery and I believe

**16.** R. 307–17.

that the recommendations regarding her return to work is [sic] the same as with respect to her back.

R. 315.

In Exhibit 44, a Report of Contact form for plaintiff dated February 28, 1980 indicates that, "Dr. Abboudi hasn't seen the patient in quite a while for her back & is unable to give any information in regards to ROM [Range of Motion], sensory, motor or reflex abnormalities. However, there is equal range of motion in both wrists & there are no sensory, motor or reflex in either wrist." R. 295.

A.L.J. Sears cited these exhibits to support his conclusion that plaintiff did not meet or equal a showing of a "[h]istory of pain and limitation of motion in any weight bearing joint or spine (on physical examination) associated with X-ray evidence of arthritis in a weight bearing joint or spine." *See* § 10.10(A). Despite the fact that different testimony exists to contradict this conclusion, the Court finds that A.L.J.'s determination regarding § 10.10(A) is supported by substantial evidence "sufficient to support a particular conclusion," *Shively v. Heckler,* 739 F.2d 987, 989 (4th Cir.1984) (citations omitted). *See Flowers v. United States Dept. of Health & Human Services,* 904 F.2d 211, 212 (4th Cir.1990); *Millner v. Schweiker,* 725 F.2d 243, 245 (4th Cir.1984) (noting that the Secretary need only draw his conclusion from one probative medical witness despite significant contrary medical evidence). After all, the Secretary has the duty of resolving conflicts in medical

evidence, and he may choose to give more credibility to the testimony or opinion of a treating physician over a non-treating medical expert. *Richardson v. Perales,* 402 U.S. 389, 399, 91 S.Ct. 1420, 1426, 28 L.Ed.2d 842 (1971) (the trier of fact has the duty to resolve the frequent situation of conflicting medical evidence); *Stephens v. Heckler,* 766 F.2d 284, 287 (7th Cir.1985) ("The medical evidence was conflicting; the medical reports were all based upon first-hand examinations by evidently competent professionals; someone had to resolve the conflict; and under the statute, that someone is the Secretary's delegate").[17] As the Appeals Council similarly noted, the Fourth Circuit "requires that the opinion of a claimant's treating physician be given great weight and may be disregarded only if there is persuasive contradictory evidence." *See Coffman v. Bowen,* 829 F.2d 514, 517–18 (4th Cir.1987) (citations omitted); *Foster v. Heckler,* 780 F.2d 1125, 1130 (4th Cir.1986). The Court concludes that sufficient testimony and documentation provided by treating physicians exists such that "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).[18]

3. *Under § 10.10(B), did plaintiff suffer from hypertension with diastolic blood pressure persistently in excess of 100 mm. Hg. measured with appropriate size cuff?*

 With regard to § 10.10(B), A.L.J. Sears found:

---

**17.** It is well established that:

The ALJ is required to make credibility determinations—and therefore sometimes made negative determinations—about allegations of pain or other nonexertional disabilities.... But such decisions should refer specifically to the evidence informing the ALJ's conclusion. This duty of explanation is always an important aspect of the administrative charge, ... and it is especially crucial in evaluating pain, in part because the judgment is often a difficult one, and in part because the ALJ is somewhat constricted in choosing a decisional process.

*Hammond v. Heckler,* 765 F.2d 424, 426 (4th Cir.1985) (citations omitted) (quoted in *Hatcher v. Secretary, Dept. of Health and Human Services,* 898 F.2d 21, 23 (4th Cir.1989)).

**18.** The Court acknowledges that the treating physicians provided different conclusions at various stages in the period of treatment and alleged disability. However, these variations are not fatal in and of themselves because sufficient evidence nonetheless exists to support the A.L.J.'s conclusion that plaintiff was not suffering from a "[h]istory of pain and limitation of motion in any weight bearing joint or spine (on physical examination) associated with X-ray evidence of arthritis in a weight bearing joint or spine." *See* § 10.10(A). For example, in addition to the exhibits cited by A.L.J. Sears in his second opinion, Exhibit 35 provides further support for the conclusion that plaintiff did not suffer a limitation of motion in her spine. In this document, Dr. Nestor F. Natalio, another treating physician, described plaintiff's medical problems and indicated that the "[r]ange of motion of the elbows and other joints are unre-

Section 10.10(B) bases disability upon obesity accompanied by hypertension with diastolic blood pressure persistently in excess of 100 mm. of mercury. Reports from N.F. Natalio, M.D., reveal that the claimant did have blood pressure of 160/100 on December 28, 1977, but he indicates that her blood pressure usually fluctuated between 100/80 to 140/90 (Exhibit 49). No other medical evidence shows persistent diastolic readings of 100 mm. of mercury or more. Accordingly, the claimant's high blood pressure does not meet or equal the requirements under Section 10.10(B).

*A.L.J. Decision II* at 4 (R. 385). The Appeals Council affirmed this finding with regard to § 10.10(B). *Appeals Council Decision II* at 2 (R. 381). The Court finds that substantial evidence exists to affirm the A.L.J.'s conclusion that plaintiff failed to meet or equal the requirements of § 10.-10(B) because she did not suffer from hypertension with diastolic blood pressure *persistently* in excess of 100 mm. Hg. *See Brown v. Sullivan*, 902 F.2d 1292, 1296 (8th Cir.1990).

4. *Under § 10.10(C), did plaintiff suffer from a history of congestive heart failure manifested by past evidence of vascular congestion such as hepatomegaly, peripheral or pulmonary edema?*

5. *Under § 10.10(D), did plaintiff suffer from chronic venous insufficiency with superficial varicosities in a lower extremity with pain on weight bearing and persistent edema?*

6. *Under § 10.10(E), did plaintiff suffer from respiratory disease with total forced vital capacity equal to or less than 2.0 L. or a level of hypoxemia at rest equal to or less than the values specified in Table III–A or III–B or III–C?*

■ With regard to the final three criteria of § 10.10, the Administrative Law Judge made the following findings:

stricted with no apparent joint abnormalities except those noted by Dr. Abboudi. X-rays of the lumbar spines are normal taken 6–2–76. . . .

There are also three more parts of Section 10.10. However, there is no evidence of a history of congestive heart failure, chronic venous insufficiency with superficial varicosities in a lower extremity, or a history of respiratory disease as prescribed. Accordingly, the claimant cannot be found to meet or equal the criteria for presumed disability under the said section.

*A.L.J. Decision II* at 4. The Appeals Council affirmed the absence of the final three factors under §§ 10.10(C)–(E). *Appeals Council Decision II* at 2. Plaintiff does not readily contest these findings; and, the Court finds that substantial evidence exists that plaintiff has not proved that she meets or equals the criteria set out in §§ 10.-10(C)–(E). Therefore, even *assuming arguendo* that plaintiff was not required to meet or equal the height/weight requirements contained in Table II for a continuous period of twelve (12) months as required by 20 C.F.R. § 404.1509, she nonetheless failed to meet or equal any of the criteria contained in § 10.10(A)–(E); therefore, she does not suffer from a presumed disability under § 10.10 because the Secretary's determination regarding each criteria is supported by "substantial evidence." *See Flowers*, 904 F.2d at 212.

7. *Did plaintiff's obesity combine with her other severe impairments to justify a conclusion that she nonetheless had a disability?*

■ With regard to her other impairments, A.L.J. Sears concluded that:

The undersigned has also considered the claimant's obesity in combination with her other severe impairments. However, the medical evidence does not result in sufficient signs, symptoms, or laboratory findings as to meet or equal the criteria for presumed disability as set forth in any section of the Listing of Impairments. Accordingly, the claimant cannot

There was no limitation of range of motion of the extremities or on bending over." R. 245–46.

be found disabled at the third step of the evaluation process....

3. The medical evidence establishes that the claimant had severe impairments consisting of a chronic lumbosacral strain, degenerative changes of the cervical spine, mild intermittent pain, high blood pressure, obesity, bilateral carpal tunnel syndrome, and arthritis, but she did not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

*A.L.J. Decision II* at 4–6. The Appeals Council did not directly discuss this conclusion; however, it summarily adopted the findings and conclusions of A.L.J. Sears. *Appeals Council Decision II* at 2.

Congress explicitly requires that "the combined effect of all the individual's impairments" be considered, "without regard to whether any such impairment if considered separately" would be sufficiently severe. 42 U.S.C. § 423(d)(2)(C); *Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir.1989). As a corollary, the Secretary must analyze all relevant evidence and state the weight afforded to the evidence before denying a claim for benefits. *Gordon v. Schweiker*, 725 F.2d 231, 235–36 (4th Cir.1984). The Secretary's primary focus in evaluating a claimant's other impairments is on "the cumulative effect the impairments had on the claimant's ability to work." *Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir.1989); *see id.* at 50 (noting that the Secretary must evaluate all the separate impairments collectively to gauge whether they "render claimant unable to engage in substantial gainful activity"). Similarly, 42 U.S.C. § 423(d)(1)(A) provides that a claimant is disabled if she shows her "inability to engage in any substantial gainful activity by reason of any medically determined physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Plaintiff's ability to perform substantial gainful activity in the local or national economy is discussed *infra.*

D. *If the claimant suffers from a severe impairment but does not meet or equal the medical criteria of Appendix 1 warranting a finding of disability without considering vocational factors, whether the impairment prevents her from performing her past relevant work?*

The next step in the sequential evaluation process required the A.L.J. to consider the plaintiff's ability to return to her past work. In both his first and second decision, A.L.J. Sears found that plaintiff was "unable to perform her past relevant work as a mold operator. This finding was not challenged by the claimant and the undersigned again concludes that the claimant is unable to return to her past relevant work." R. 386. Again, neither party readily contests this finding; and the Court finds this determination that plaintiff was unable to perform her past relevant work to be supported by substantial evidence. *See Flowers*, 904 F.2d at 212.

E. *If the claimant is not able to perform her past relevant work, whether the claimant is able to perform other work in the local or national economy considering both her remaining physical and mental capacity and her vocational capacities to adjust to a new job?*

If the fifth and final step of the sequential evaluation process is reached, the burden of proof is on the Secretary to show that there is a significant number of jobs in the local or national economy that claimant could perform after consideration of the claimant's residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1520(f); *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980) (citing *Hall v. Secretary of Health, Ed. and Welfare*, 602 F.2d 1372, 1377 (9th Cir.1979)). The Secretary may meet its burden through the use of a vocational expert or through the application of a claimant's exertional and nonexertional limitations and vocational factors to Medical Vocational Guidelines ("grids") contained on App. 2., Subpt. P, Reg. No. 4.

*Wilson v. Heckler,* 743 F.2d 218, 220 (4th Cir.1984); *see also Heckler v. Campbell,* 461 U.S. 458, 468–69, 103 S.Ct. 1952, 1958–59, 76 L.Ed.2d 66 (1983) (where the Supreme Court approved the use of the grids contained in 20 C.F.R. § 404, Subpt. P, App. 2.) The grids indicate the proper disability determinations for various combinations of age, education, and previous work experience in conjunction with the claimant's residual functional capacity, or her maximum capacity for sustained performance of the physical and mental requirements of jobs. 20 C.F.R. § 404, Subpt. P, App. 2, § 200.00(c).

Jobs in the national economy are classified as sedentary, light, medium, heavy, and very heavy. *See* 20 C.F.R. § 404.1567. Sedentary and light work are defined as follows:

(a) *Sedentary work.* Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

(b) *Light work.* Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm and leg controls. To be considered capable of performing a wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

The form SSA–826 that Dr. Abboudi filled out for the Department of Health, Education, and Welfare (R. 236–239) provides an attachment containing the definitions from the Dictionary of Occupational Titles for these work classifications and describes these categories in the following manner:

Sedentary work implies a capacity to sit for at least 6 hours in an 8 hour work day and to lift up to 10 pounds maximum. The ability to walk and stand up to approximately ⅓ of the work day (2–3 hours per day per 8 hour day) is also implied in sedentary work.

Wide range of light work presupposes an ability to stand and walk at least 6 hours in an 8 hour work day, lift and carry up to 10 pounds about ⅔ of the workday, and occasionally lift 20 pounds maximum. Light work may require sitting most of the time, but has a significant degree of pushing and pulling of arm and/or leg controls.

A distinction should be made between the ability to do a wide range of light work and restriction on to a narrow range of light work. The residual ability to meet the maximum demands of light work as described above with the only exception that the maximum amount that could be lifted is 15 pounds instead of 20 pounds would represent a marginal ability to do a wide range of light work and would reasonably justify the inference of ability to do a wide range of light work. On the other hand, an impairment which permitted only that range of light work which is performed in a sitting position would substantially limit the range of work which the claimant would perform.

R. 239; *see also Van Huss v. Heckler,* 572 F.Supp. 160, 166 (W.D.Va.1983) (applying the *Dictionary of Occupational Titles* definitions).

20 C.F.R. § 404.1567(a) further states that the definition of sedentary work contained in this provision has the same meaning as that from the *Dictionary of Occupational Titles. Wilson v. Heckler,* 743 F.2d at 220–22. As *Wilson* indicates, Appendix 2, Medical–Vocational Guidelines, § 201.00(h) provides: "However, a finding of disabled is not precluded for those individuals under age 45 who do not meet all of

the criteria of a specific rule and who did not have the ability to perform a full range of sedentary work." *Id.* at 222.

In *Wilson,* the Court determined that the claimant suffered from both exertional and non-exertional limitations.[19] *Id.* Therefore, the Fourth Circuit concluded that the Secretary could not rely on the grids to provide conclusive evidence that the claimant could perform work in the local or national economy. *Id.; see also Grant v. Schweiker,* 699 F.2d 189, 192 (4th Cir.1983). Instead, the grids may only be used as guidelines. *Wilson,* 743 F.2d at 222 (citing 20 C.F.R. § 404, Subpt. P, App. 2, § 200.-00(e)(2) and *Gory v. Schweiker,* 712 F.2d 929, 931 (4th Cir.1983)); *see also Walker v. Bowen,* 889 F.2d at 49. The Fourth Circuit further held in *Wilson* that:

> since the tables or grids could not be relied upon to furnish the evidence of disability or non-disability, the Secretary had the burden of offering other evidence to that effect, especially of a job in the national economy which the plaintiff could perform. *Hall v. Harris, supra* [658 F.2d 260 (4th Cir.1981]. But no vocational expert testified.

*Wilson,* 743 F.2d at 222. Therefore, the Court remanded this issue to the Secretary for further findings.

In *A.L.J. Decision II* at 5, A.L.J. Sears found that:

> prior to June 30, 1982, the claimant had the physical capacity to perform the exertional and nonexertional requirements of work as long as it did not require the lifting of over 15 pounds. This allowed her to perform the full range of sedentary work as defined in Social Security Regulation 404.1567. The claimant was also found to be a younger person prior to June 30, 1982,[20] to have a limited education, and previous work experience of a low, semi-skilled nature. Using the

described vocational factors, the undersigned found that Rules 201.19, 201.20, 201.25, and 201.26 of the Medical–Vocational Guidelines contained in Appendix 2, Subpart P, Regulations No. 4, directed a conclusion that the claimant was not disabled prior to June 30, 1982. The undersigned also took into consideration the claimant's complaints of pain but did not find that they were credible.[21] The United States District Court found in its decision of March 24, 1989, that 'the ALJ properly considered her subjective complaints and that his conclusions are supported by substantial evidence.'

R. 386 (footnotes added). Given these exertional and nonexertional limitations, the A.L.J. then mechanically applied plaintiff's restrictions to the grids contained in Appendix 2. Specifically, A.L.J. Sears referred to Rules 201.19, 201.20, 201.25 and 201.26 to conclude that plaintiff was not disabled. *See Coffman v. Bowen,* 829 F.2d 514, 518 (4th Cir.1987) (holding that the Secretary can meet the burden of showing that plaintiff has the capacity to perform work in the local or national economy and that this type of job exists in the national economy by proper reference to the Medical Vocational Guidelines). The Appeals Council affirmed these findings and conclusions, and it also noted that A.L.J. Sears' application of grids "establishes a significant number of sedentary jobs exist[ing] in the national economy which she could have performed." *Appeals Council Decision II* at 2 (R. 381).

The medical evidence regarding plaintiff's exertional and nonexertional limitations varied, including testimony indicating a range above and below the definitional requirements of 20 C.F.R. § 404.1567(a) and the *Dictionary of Occupational Titles.* The Court is not required to weigh

---

**19.** As in the present case, the claimant in *Wilson* suffered from pain which is sensory and, therefore, a non-exertional impairment as provided for by 20 C.F.R. § 404, Subpt. P, App. 2, § 200.-00(e).

**20.** *See* 20 C.F.R. § 404.1563(b) (noting that a claimant like plaintiff under the age of fifty (50) is considered a "younger person").

**21.** A.L.J. Sears explicitly found that "[t]he claimant's capacity for the full range of sedentary work was not significantly compromised by her additional nonexertional limitations." R. 388.

this differing evidence, but simply must evaluate whether the Secretary's decision is supported by substantial evidence. *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir.1990). Exhibit 35 clearly provides sufficient probative evidence to support A.L.J. Sears' conclusion. In Exhibit 35, Dr. Nestor F. Natalio, a treating physician, diagnosed plaintiff's impairments as moderate hypertension and exogenous obesity. He submitted a "Physical Capacities Evaluation" form indicating that plaintiff had a work capacity that defendant contends fell well within the demands of sedentary work. Dr. Natalio's clinical evaluation revealed that plaintiff could sit eight (8) hours per day, stand for four (4) hours (with the potential for more), and walk for four (4) hours (with the potential for more); she could frequently lift up to ten (10) pounds and occasionally eleven (11) to twenty (20) pounds; she could use her hands for such repetitive actions as simple grasping, mild pushing and pulling, and fine manipulating; she could use her feet for repetitive movements as in operating foot controls; she could occasionally bend, squat and crawl; and she could frequently reach above shoulder level. R. 248. These restrictions, if any, meet the parameters set by both the C.F.R. and *Dictionary of Occupational Titles* definitions for sedentary work.

■ Plaintiff complains that A.L.J. Sears decided to use a medical expert, Dr. Baker, to measure plaintiff's ability to perform work in the local or national economy then completely disregarded his findings and opinions. Plaintiff's Supplemental Brief at 16. She further argues that Dr. Baker's findings and opinions came after concurrence with plaintiff's treating physicians and were consistent with these treating physicians' findings regarding plaintiff's impairments. Plaintiff then cites a number of cases for the proposition that Administrative Law Judges should not interpose their own viewpoint on potential claims over the contrary opinion and testimony of the treating physicians and medical experts.[22] *Id.* Clearly, the task of the Administrative Law Judge is not to second-guess the contrary opinions of medical experts and treating physicians. *See Wilson,* 743 F.2d at 221. However, contrary to plaintiff's argument, A.L.J. Sears' opinion was not different from the testimony and opinion of *all* the treating physicians regarding plaintiff's alleged disability at all times. As indicated in the decision of the Appeals Council, certain medical evidence from the treating physicians in the record was consistent with the A.L.J.'s determination that plaintiff was "not disabled."

It is true that Dr. Baker offered a different conclusion regarding plaintiff's ability to perform work;[23] however, the Court notes that Dr. Baker was not one of plaintiff's treating physicians. The A.L.J. judged the testimony and evidence of the treating physicians to be more persuasive regarding plaintiff's exertional and nonexertional limitations, thereby concluding that "Dr. Baker's opinions are not supported by the evidence as a whole." *A.L.J. Decision II* at 5 (R. 386). In the Fourth Circuit, the opinion of the claimant's treating physician is given great weight and may be disregarded only if there is persuasive contradictory evidence.[24] *Coffman v. Bowen,* 829 F.2d 514, 517 (4th Cir.1987) (citing *Foster v. Heckler,* 780 F.2d 1125, 1130 (4th Cir.1986) and *Mitchell v. Schweiker,* 699 F.2d 185, 187 (4th Cir. 1983)). In addition, under the Fourth Circuit's holding in *Millner v. Schweiker,* 725

---

**22.** *See Smith v. Schweiker,* 795 F.2d 343, 346 (4th Cir.1986); *Martin v. Secretary of Health, Ed. and Welfare,* 492 F.2d 905 (4th Cir.1974); *Kyle v. Cohen,* 449 F.2d 489, 492 (4th Cir.1971); *West v. Bowen,* 656 F.Supp. 664 (S.D.N.Y.1987); *Brungard v. Secretary of Health and Human Services,* 638 F.Supp. 24 (M.D.Pa.1985).

**23.** Based upon his evaluation of the record, Dr. Baker testified that plaintiff could have had limitations on her ability to stand and walk, sit for long periods of time, or perform fine motions with her hands. R. 386.

**24.** The Court notes that the medical records of the treating physicians, cited by A.L.J. Sears in support of his conclusion that plaintiff could perform a full range of sedentary work, satisfy the C.F.R. definition, and Exhibit 35 also clearly meets the requirements of both the C.F.R. and *Dictionary of Occupational Titles.*

F.2d 243, 245 (4th Cir.1984), "it is immaterial that eight medical witnesses disagreed with the conclusion, provided one such witness gave sufficient probative evidence." Dr. Natalio provided sufficient probative evidence, and A.L.J. Sears found that plaintiff's subjective complaints regarding her nonexertional impairments were not credible. In his opinion, Judge Clarke determined that the A.L.J. properly relied on testimony that plaintiff was not significantly restricted in her ability to manipulate objects nor by pain. *See Smith v. Sullivan*, No. 88–677–N, Memorandum Opinion and Order at 12 (March 24, 1989).[25] Therefore, with the application of the grids, the Court finds that substantial evidence exists to conclude that plaintiff was capable of performing a full range of sedentary work as of June 30, 1982 under the definitions from 20 C.F.R. § 404.1567 and the *Dictionary of Occupational Titles.* Consequently, plaintiff was "not disabled" for purposes of determining disability insurance benefits.

As the Fourth Circuit noted in *Seacrist v. Weinberger*, 538 F.2d 1054, 1057 (4th Cir.1976):

> [I]t is the responsibility of the Secretary and not the courts to reconcile inconsistencies in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion. Accordingly, while we are unable to say that no other conclusion can be drawn from the evidence presented, we find that the Secretary's determination is supported by substantial evidence.

*See also Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir.1987) (noting that courts will defer to the credibility determinations made by the A.L.J. regarding the objective medical evidence and plaintiff's own testimony at the hearing). The evidence in the record is "sufficient to support a particular conclusion" of the Administrative Law Judge as well as to "justify a refusal to direct a verdict were the case before a jury." *See Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir.1984). The Secretary met its burden at the fifth step of the sequential evaluation process in showing that plaintiff could perform sedentary work in the local or national economy. *See* 20 C.F.R. § 404.1520(e). Consequently, plaintiff is not disabled for purposes of obtaining disability insurance benefits.

### RECOMMENDATION

It is hereby recommended that the final decision of the Secretary of the Department of Health and Human Services be AFFIRMED, that plaintiff's Motion for Summary Judgment be DENIED, and that defendant's Motion for Summary Judgment be GRANTED.

### REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within ten (10) days from the date of mailing of this report to the objecting party (*see* 28 U.S.C. § 636(b)(1)(C)) computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(e).

2. A district judge shall make a *de novo* determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a

---

**25.** In disregarding plaintiff's subjective complaints about her pain and nonexertional limitations, Judge Clarke further noted:

> The ALJ found that Smith's 'testimony as to pain, fatigue, problems holding things and subjective restrictions are not considered credible as to claimant's physical status prior to June 30, 1982' (Tr. 29). Smith asserts that the ALJ gave no reason for this finding and improperly disregarded medical reports recording her complaints of pain. The ALJ stated that he carefully evaluated Smith's subjective complaints of pain (Tr. 27–28). He found that these complaints were not supported by the medical record....

*Smith v. Sullivan*, No. 88–677–N, Memorandum Opinion and Order at 12 (March 24, 1989). Judge Clarke then discussed the various evidence regarding plaintiff's nonexertional limitations. *Id.* at 12–15.

judgment of this Court based on such findings and recommendations. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Carr v. Hutto,* 737 F.2d 433 (4th Cir.1984), *cert. denied,* 474 U.S. 1019, 106 S.Ct. 567, 88 L.Ed.2d 552 (1985); *United States v. Schronce,* 727 F.2d 91 (4th Cir.1984), *cert. denied,* 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984).